STUCKEY, et al. *v.* SALLIS, et al.

No. 39273          October 4, 1954          74 So. 2d 749

*John R. Anderson,* Tupelo; *Satterfield, Ewing, Williams & Shell,* Jackson, for appellants.

700

*Brown & Elledge,* Fulton, for appellees.

LEE, J.

Mrs. T. S. Sallis and husband, W. B. Sallis, by their bill in the chancery court, sought to cancel the claim of J. G. Stuckey and others, the heirs of J. T. Stuckey, deceased, to eighty acres of land, more or less, as described therein. The answer of the defendants denied the substantial allegations of the bill, and they made their an-

swer also a cross bill, whereby they sought a cancellation of the claim of the complainants and the recovery from them of a sum of money for the mining of bentonite on the land. Answer under oath thereto was not waived.

In their answer under oath to the cross bill, the complainants reiterated the substantial allegations of their original bill, namely, that when they purchased the land in question from J. T. Stuckey, he pointed out the south boundary thereof as a blazed and hacked line, put them in possession, and that they have held the same adversely ever since. When the evidence was concluded, the cause was taken under advisement; and after the submission of briefs, the court rendered a written opinion, awarding the complainants the relief for which they prayed, and denying the defendants any relief. The decree conformed to the chancellor's opinion, and the defendants appealed.

On December 2, 1905, J. T. Stuckey, being the owner of the SE¼ of Section 12 and the NE¼ of Section 13, Township 11, Range 9 East, and the W½ of the SW¼ of Section 7, Township 11, Range 10 East, conveyed the lands in Sections 12 and 7 to W. B. Sallis, retaining unto himself the land in Section 13. The dispute arose over the location of the line between Sections 12 and 13, being the line between the parties.

Two surveys were involved, one by S. M. Rotten, and the other by B. J. Brigance. The one by Rotten runs from a blackgum corner west along a blazed and hacked line to an iron stake. Under the Brigance survey the blackgum corner and the iron stake are approximately 250 and 123 feet, respectively, south of his line. If the land of the complainants extends to the Rotten line, they are entitled to prevail. On the other hand, if their land extends only to the Brigance line the defendants should have been successful.

It was the contention of the complainants that, when they purchased the land from J. T. Stuckey, he pointed out the south line thereof; it was hacked and blazed; he

thereafter recognized this line; it coincides with the Rotten survey; and that they have been in possession of the land north of that line ever since.

On the contrary, it was the contention of the defendants that Stuckey did not point out the line; the true government lines should govern; the Brigance survey is in accord with those lines; the complainants have not been in adverse possession; and that the first knowledge of an adverse claim thereto was in 1948 or 1949.

Complainants offered evidence substantially to this effect: the hacked line, practically identical with the Rotten survey, has been in its present location 35 years. Sallis had a pasture on some of the land in dispute, and a part of it was fenced. A house, which he built on the land in Section 7, was north of the line, if extended. Stuckey was present when the house was "raised." The Brigance line, extended, would go north of that house. In 1917, the timber of Sallis was cut up to that line. In 1922, Stuckey and Sallis walked the line between them, with one Moseley hacking, and the line so hacked was actually 10 or 12 feet south of the Rotten line. In 1927, when Stuckey and Sallis sold their timber to different purchasers, those purchasers, respectively, cut their timber up to this hacked line. In 1936, when one buyer purchased timber from both Stuckey and Sallis and when both of them were present, Stuckey pointed out the line, the same as the Rotten line, and the purchaser cut the timber and paid them accordingly. Again in 1945, the timber on the plot, which was stripped for the bentonite pit, was cut and sold as the property of Sallis. The only evidence that Stuckey pointed out the south boundary at the time of sale is found in the answer of the complainants under oath to the cross bill.

The evidence for the defendants disclosed a contract by Stuckey, of date of March 24, 1937, for a gas and mineral exploration of the N½ of NE¼ of Section 13, and an oil lease, of date of May 15, 1944, on this govern-

mental subdivision. Without going into detail, it is sufficient to say that the evidence sharply disputed the complainants' possession and use of the land. It did not affirmatively deny that Stuckey pointed out the line at the time of sale, nor did it so deny that he pointed out and recognized the line in 1922 and 1936.

The appellants contend here that the answer to the cross bill was not admissible in evidence; but if so, Stuckey's pointing out the line did not estop him and his heirs from claiming to the true line under their record title; and that the appellees did not have adverse possession of the disputed area for a sufficient time to give them title thereby.

When the answer to the cross bill was offered in evidence, the defendants objected on the ground that such evidence was incompetent under Section 1690, Code of 1942. A ruling was reserved by the chancellor. However, in their subsequent brief before him, the defendants conceded its admissibility. Thus the point was not properly preserved for review here. Griffith's Miss. Chancery Practice, 2d Ed., Section 676.

At any rate, the cross bill required answer under oath. It compelled the complainants to testify. Hence the defendants waived the statutory incompetency of the complainants. Birchett v. Hundermark, 145 Miss. 683, 110 So. 237. The answer was responsive and it was not affected by their incompetency as witnesses. Griffith's Miss. Chancery Practice, 2d Ed., Section 364; Saffold v. Horne, 71 Miss. 762; Fant v. Fant, 173 Miss. 472, 162 So. 159. The answer was obviously admissible for such credit as it was fairly entitled to. Section 1294, Code of 1942; Griffith's Miss. Chancery Practice, 2d Ed., Section 570; Money v. Dorsey, 15 Miss. 15.

On the sharply disputed issue of fact as to possession, the principle in Bowlin v. Dye, 59 So. 2d 327 (Miss.), seems directly in point. In that case, it is true, McGehee and Nunnery put a fence on the line, which both

of them recognized, and McGehee and his successors in title remained in possession for more than ten years thereafter. In the case here, in 1922, Stuckey and Sallis walked their line and Moseley hacked it. This was wild land. The chancellor, if he believed this evidence, was justified in concluding that there was a mutual recognition of this line, since the affected parties were both present, and that no other buffer, such as a fence, was necessary to be placed between them. Again in 1936, according to the evidence, the parties repeated their previous recognition. Twenty-four years elapsed between the date of the first recognition and Mr. Stuckey's death, without any proper effort to nullify the same. See also Kornegay v. Montgomery, 194 Miss. 274, 12 So. 2d 423; Daniels v. Jordan, 161 Miss. 78, 134 So. 903; Louis Cohn & Brothers v. Peyton, 145 Miss. 261, 110 So. 509.

The decree of the lower court is sustained by substantial evidence, and the cause is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.