**R. M. STRICKER**

v.

**J. P. MORGAN et al.**

Civ. A. No. 750.

United States District Court
S. D. Mississippi, W. D.

Jan. 20, 1958.

Clay B. Tucker, Woodville, Miss., Gerard H. Brandon, Natchez, Miss., Dale, Richardson & Dale, Vidalia, La., for plaintiff.

W. H. Talbot, New Orleans, La., Brunini, Everett, Grantham & Quin, Vicksburg, Miss., Richard T. Watson, Woodville, Miss., for defendants.

MIZE, District Judge.

This lawsuit was filed by the plaintiff against the defendant on the 15th of October, 1955 and arises out of the purchase of the Esperance Plantation, which is located in Concordia Parish, Louisiana, and was purchased by J. P. Morgan, the defendant, on or about the 30th of December, 1940. The plaintiff filed his complaint contending that he and the defend-

ant, Morgan, had entered into a partnership agreement on or about November, 1935 for the purpose of engaging in buying and selling lands and timber, and that the plaintiff would furnish his knowledge of the value of timber and timber lands and the defendant would advance the money for the purchase of the timber and land, and that when the timber was sold and the defendant was reimbursed for the advances, that then the plaintiff and defendant would own the land as partners and would share the profits in all of their deals. He further alleged that if he was mistaken in this, that then they were engaged in joint ventures and that on the same reasoning and facts, he was entitled to a half interest in the Esperance Plantation. And, thirdly, that if he was mistaken in this contention, then that there was a resulting trust in that there was an agreement that the land would be owned by the plaintiff and defendant and the title would be taken in defendant's name, and when the advances made by the defendant had been repaid a conveyance would be made by the defendant to the plaintiff for a one-half interest in the property; that in accord with that agreement the land was purchased and taken in the name of the defendant, but that defendant declined and refused to convey the one-half interest to him. The defendant answered the complaint and denied these allegations and denied that there was ever any partnership; he denied that there was any resulting trust, and denied that there was any joint venture in which he had agreed to convey to the plaintiff a one-half interest in the property.

The plaintiff undertook to prove the allegations of his complaint by the records of the defendant and of himself, and of the Louisiana Box Company, and by a vast amount of correspondence between plaintiff and defendant beginning as far back probably as 1935 and extending up through 1955, and plaintiff contends that from all of this record testimony and circumstantial evidence, the conduct of the defendant and statements against interest made by the defendant, that the plaintiff is entitled to a judgment. The defendant denies all of the allegations and introduces a large number of exhibits containing statements against the interest of the plaintiff, made by the plaintiff, and also documentary evidence to the effect that the defendant had denied at all times that plaintiff owned any interest in the property other than in the timber, and also pleads laches and contends that as a matter of law the plaintiff could not recover anything because a partnership for the ownership of land cannot be formed under the laws of the state of Lousiana except in writing and that the same law is applicable to a joint venture.

The only controversy in the present case is with reference to the Esperance land, which is located in the state of Louisiana, in Concordia Parish. The plaintiff sought to be declared the owner of a one-half interest in the proceeds and revenues resulting from the sale of oil leases and sought an accounting from the defendants and that he, the plaintiff, be declared the owner of an undivided one-half interest in the Esperance land and the owner of a one-half interest in all the oil royalties, bonuses and rentals accruing to and derived from all the oil, gas and mineral leases affecting and pertaining to the Esperance property located as aforesaid. There is no controversy about the timber on Esperance Plantation as the defendant, from the beginning, has recognized this ownership.

■ The burden of proof is upon the plaintiff to establish his cause of action by a preponderance of the evidence and in this the plaintiff has failed, and his complaint will be dismissed for the reason that he has not met the burden of proof in establishing that there was a partnership agreement with reference to the purchase of the Esperance Plantation; and, second, as a matter of law, under the law of Louisiana, a partnership for the purchase and sale of lands cannot be formed unless in writing, and in the present case it is admitted that there was no written agreement.

The record is very lengthy as it involves dealings between the plaintiff and

defendant extending back as far as 1922, at which time, in 1922, the defendant was engaged in the lumber business and manufacturing boxes, and was the substantial owner of the Louisiana Box Company. The plaintiff was a skilled timber man and as early as 1922 was selling logs to the defendant. The defendant prior to 1922, and before he purchased the Louisiana Box & Lumber Company, had worked for it and on the death of the owner, along about 1922, the defendant acquired that business, which was located at Kenner, Louisiana. It was engaged in the manufacture of boxes and packing crates and in such business used large amounts of cottonwood and willow, which were found in abundance along the Mississippi River. The defendant operated that business as a corporation until 1939, when it was dissolved and a partnership was formed between the defendant, his son, Edward C. Morgan, and Fred N. Owen, who was the bookkeeper for Louisiana Box & Lumber Company and presently, and up until this date, employed by the defendant. The defendant was engaged in other types of business and investments and maintained a set of records separate and apart from the Louisiana Box & Lumber Company, in which he recorded the transactions of his other interests. Miss Catherine Gonzales, who testified in the case, was employed about 1938 as personal secretary to the defendant and with the responsibility of keeping the personal records of the defendant.

The plaintiff had a wide experience with timber located along the Mississippi River, both in Mississippi and in Louisiana, and engaged in a large number of purchases and sales of timber and lands on the East and West banks of the Mississippi River, and with a large number of different parties, having been engaged in this business continuously from sometime prior to 1922 up until the present time. These transactions with other people were scattered throughout Louisiana and Mississippi and he had had some ten or twelve transactions with the defendant Morgan since the year 1930. The only

one involved herein, as aforesaid, is the Esperance Plantation, but there was introduced into the record transactions and dealings between the plaintiff and the defendant which indicate, along with his dealings with others, that he might be classified to a large extent as a timber broker, or, as he, himself, sometimes expressed it, as a "middle man" in these transactions.

The plaintiff alleges in his complaint certain transactions between plaintiff and defendant involving timber and timber lands about which there is no controversy. These transactions were alleged and introduced in evidence in plaintiff's effort to establish that there was a partnership. One transaction was that of the Walnut Grove Plantation located in Wilkinson County, Mississippi involving land and timber, and was made November 16, 1935. Another one was the McKellar transaction, wherein the timber located in Wilkinson County, Mississippi was purchased on July 20, 1936. The next one was the Dr. Loeb or Cat Island timber located in West Feliciana Parish and was purchased October 8, 1937. Another transaction was Artonish Plantation, located in Wilkinson County, Mississippi and involving the land and timber and was purchased December 29, 1939. Another was the Stockett lands, located in Wilkinson County, Mississippi and involving the land and timber, which was purchased January 18, 1940. The next one was the Woodlawn Plantation, located in Wilkinson County, Mississippi, purchased December 10, 1941 and involving land and timber. Another was the Mackie timber tract, located in West Feliciana Parish and was purchased April 4, 1942. The next one was the McKellar land, involving the land and remaining timber located in Wilkinson County, Mississippi and dated February 6, 1943. The plaintiff, in this particular transaction, refused to go into the deal because he did not like some of the other parties who were in it. The next one was the Point Breeze timber in Concordia Parish, purchased July 19, 1944, and involving the timber only. These transactions above mention-

ed will be referred to later in this opinion and slightly more in detail.

The next transaction, and the one here in controversy, is the Esperance Plantation, located in Concordia Parish, Louisiana, and the purchase was made December 30, 1940. It had formerly been owned by one Campbell, who lives in Memphis, and the sale of the Esperance Plantation from A. H. Campbell to the defendant, J. P. Morgan, was handled by Honorable John Dale, one of the attorneys for the plaintiff in the present case, who at that time was representing A. H. Campbell. This transaction happened sometime the latter part of December, 1940 and oral testimony was offered as to what transpired, but the time has been so long that the memories of witnesses were bad as to what actually happened. One witness, Graham, testified that the defendant said to the plaintiff, "Mason, lets you and I buy it", but that is contradicted by his own statement and also by the failure of anyone else to hear the conversation, even though he admits that it took place in the room where Mr. Dale was. I, therefore, will have to decline to give any weight to the testimony of Graham, even if it should be competent, as his memory is entirely vague and he is contradicted by other witnesses.

The purchase of the Esperance Plantation came about in this way, and it is important to go somewhat into detail as to the manner it was acquired for the reason that it is the contention of the plaintiff that other transactions hereinbefore referred to and hereinafter to be referred to would afford an inference that the purchase of Esperance was under similar circumstances. However, as a matter of fact, it was different. Esperance was owned by A. H. Campbell of Memphis, who had it up for sale for the total consideration of $26,500, subject to the exception and reservation unto himself of all the minerals in the South Half thereof. Morgan and Stricker were interested in the purchase of the timber only and had no thought at that time of buying the land. Charles H. Barchus, a real estate agent of Natchez, was the real estate agent negotiating for the sale of the property. Honorable John Dale, Jr., of Vidalia, Louisiana was the attorney for Mr. Campbell in these transactions, which transactions later consummated in the sale of the entire tract to defendant, Morgan, but Morgan and Stricker, in conformity to prior transactions, had an understanding between themselves that Stricker would acquire a half interest in the timber. Plaintiff, Stricker, procured an estimate to be made of the standing timber on the entire tract and he and Morgan thereafter became very much interested in buying the timber. Thereupon Stricker made a written proposal to Barchus to purchase the standing timber on Esperance, with five years to cut and remove the same, at and for the sum of $21,000 in cash, and this proposal was made on behalf of Stricker and Morgan. The offer was dated December 18, 1940, the timber estimate having been completed on December 9, 1940, and the cost of the estimate, which was made by estimators Roberts and Wheeler was paid by checks of Stricker on the Commercial Bank of Woodville.

J. S. Laub of Natchez and R. A. Graham of Concordia Parish desired to purchase the Esperance Plantation for cattle raising purposes and they agreed between themselves that Laub was to finance the purchase of the property, but subject to the sale of the timber thereon, and that title would be taken in the name of Laub, with the understanding that when Laub should have received reimbursement from funds arising from cattle sales, a half interest in the property would be conveyed to Graham, and they would operate together. This was with the understanding that Graham would handle the cattle raising operation on the property for the benefit of himself and Laub. (Stricker and Morgan were not interested in this.) There were others interested in the purchase of the timber, including J. M. Jones of the J. M. Jones Lumber Company, but Jones was not the high bidder for the timber, though on the first draft of instruments he was named as the prospective purchaser of the tim-

ber on Esperance. It was the understanding of Laub and Graham that they would buy the place, but before the sale was consummated they would have a sale for the timber and from the proceeds of the sale of the timber would pay the consideration to Campbell. Initially documents were drafted and submitted to the owner, Campbell, whereby Campbell would make a separate conveyance of the standing timber (and as that instrument was drafted, the proposed purchaser was J. M. Jones). A separate instrument of conveyance of the Esperance Plantation was made, subject to the prior sale of the timber thereon, with five years to cut and remove the same, to J. S. Laub, with the reservation in Campbell of the mineral rights on the South Half of the property. Campbell declined to execute two instruments and by letter advised his attorney, Mr. Dale, that he would make only one deed and that the purchaser of the entire property could make a separate conveyance of the timber if he desired. Under this arrangement Campbell was willing to carry $2,500 of the purchase price for a deferred payment and would waive a vendor's lien on the timber as to the deferred payment of that amount.

Accordingly, one instrument was prepared by the attorney, Dale, to convey the entire Esperance Plantation tract, subject to the aforesaid mineral reservation as to the South Half, to J. S. Laub, with the understanding that the total purchase price would be $26,500, of which all was to be paid cash on delivery of the deed, except $2,500 would be deferred. Dale also prepared a separate timber deed to be executed by Laub, but in the draft thereof the name of the grantee was left blank. At that time Dale did not know in whose name title to the timber would be taken. At that time and under that arrangement it was understood that Stricker and Morgan were to buy the timber and pay $21,500 for it and would have five years within which to cut and remove the timber; that Morgan would put up the money, $21,500, and the attorneys' fees and expenses, recording fees, etc., and title to the *timber*

taken in his name. It had been anticipated that the transaction would be concluded during December, 1940, but when execution of two instruments by Campbell was not approved by him, the revised instruments could not be prepared in time to conclude the matter during 1940, but Attorney Dale advised Campbell that the instruments could be dated as of a date in December, 1940, and accordingly the instruments were so prepared of that date as written therein.

About January 9, 1941 all the parties, that is J. S. Laub, R. A. Graham, J. P. Morgan, R. M. Stricker and John Dale, Jr., attorney, met in the office of Dale at Vidalia to conclude the purchase of the property from Campbell under the aforesaid arrangement. Also present in the office were Fred N. Owen, who was the bookkeeper for Mr. Morgan and a partner in the business of Louisiana Box & Lumber Company, and Charles Barchus. At this meeting a disagreement developed as between Laub on the one part and Stricker and Morgan on the other part as to the time in which Morgan and Sticker should cut and remove the timber from the Esperance Plantation. Laub was insisting that he would allow only two years to Morgan and Stricker in which to cut and remove the timber. This property is located on the Mississippi River and much of the timber is rafted down the river and due to the fact that sometimes the river would not be sufficiently high to remove it all, Morgan and Stricker would not agree to the two year limitation, but insisted and demanded that the period of five years be allowed. Laub and Graham could not go through with the purchase unless Morgan and Stricker acquired the timber and since they could not agree upon the time limit, the transaction as arranged was abandoned. Campbell was adamant and would not sell the timber without selling the entire plantation. Stricker and Morgan, therefore, could not acquire the timber unless other arrangements were made.

The Esperance tract comprised a total of 2,500 acres, more or less, and Morgan

and Stricker were interested only in the purchase of the timber, but Morgan agreed to purchase the entire tract, land, timber and all, from Campbell for the price of $26,500 and recognize a one-half interest in the timber in Stricker. In other words, Morgan substituted himself in the place of Laub and Graham and thereby acquired the land for himself and he and Stricker acquired the timber. Attorney Dale was thereupon instructed and requested to procure another deed from Campbell conveying the entire property unto the defendant, Morgan, for a total consideration of $26,500, all to be paid in cash. Dale did this, forwarded the deed to Campbell, which he executed, and on or about Jan. 9, 1941 the transaction was consummated. The consideration was paid by three checks, one drawn on the National Bank & Trust Company of New Orleans in the name of the Louisiana Box & Lumber Company and signed by Fred N. Owen, made payable to the order of John Dale, Jr., in the amount of $2,500, which check bore the following endorsement on the back: "Part payment in the purchase of Esperance Plantation in Concordia Parish, Louisiana from A. H. Campbell, Memphis, Tennessee." Another check was in the handwriting of Fred N. Owen, but at the express dictation of Morgan, and made out on Louisiana Box & Lumber Company form, and was signed by Fred N. Owen, payable to the order of John Dale, Jr., in the sum of $19,000 on the Whitney National Bank of New Orleans, with the following endorsement on the back: "Part and final consideration and payment in the purchase of Esperance Plantation in Concordia Parish, Louisiana from A. H. Campbell, Memphis, Tennessee." The third check was for $5,000, made out in the handwriting of Fred N. Owen, was on the Commercial Bank of Woodville, Mississippi, signed by J. P. Morgan, and the endorsement on the back of the check was: "Part and final consideration and payment in the purchase of Esperance Plantation in Concordia Parish, Louisiana from A. H. Campbell, Memphis, Tennessee." These checks were left with John Dale, Jr., to complete the purchase of the Esperance Plantation whenever the deed was received from A. H. Campbell, properly executed and delivered to J. P. Morgan. This was done about January 15, 1941 and was delivered by Attorney Dale to defendant, Morgan, by letter of date January 15, 1941, copy of which letter was transmitted to Mr. Stricker and a copy to Acland Jones, an attorney of Woodville, Mississippi.

As hereinbefore stated, the case was developed to a large extent by documents, correspondence, books of accounts and other circumstances, as well as some oral testimony as to what happened in the office of John Dale when Laub and Graham abandoned their transaction. Stricker nor Morgan, could testify in the case, due to the fact that Morgan is insane and the statute of Mississippi makes the testimony of Stricker inadmissible under those circumstances. Prior to the time Morgan became insane his attorneys served notice on attorneys for plaintiff that they would take the deposition of R. M. Stricker and of John Dale, one of the attorneys for Stricker, on March 14, 1956, and in accord with that notice these depositions, pursuant thereto, were taken on March 23, 1956 for discovery purposes. On August 11, 1956 the plaintiff served notice on attorneys for the defendant that they would take the deposition of Morgan on August 23, 1956. However, after serving that notice and prior to taking the deposition an affidavit was filed on August 16, 1956 from Morgan's attending physician, advising that he was non compos mentis, and thereafter, on November 20, 1956, he was legally and judicially adjudicated to be non compos mentis by a judgment of the Twenty-fourth Judicial District from Jefferson Parish of Louisiana, and on proper motion, and before trial of the case herein, Mrs. Margaret Koehler Morgan was appointed curatrix and substituted as party defendant in this case. When the trial started in the present case plaintiff, Stricker, was offered as a

witness and upon objection of the defendant to his testimony and after argument, the court sustained the objection and held that Stricker was prohibited by the statute from testifying. Counsel for plaintiff thereupon requested time in which to further prepare his case, which the court granted and gave counsel for the plaintiff an opportunity to contest the mental condition of defendant, Morgan. Counsel for plaintiff made a complete investigation and satisfied himself that Morgan was non compos mentis, made no objection on that ground, but contended that Stricker was a competent witness. Section 1690 of the Code of 1942 of Mississippi, generally known as the "Dead Man's Statute, prohibits anyone from testifying to prove his claim against a deceased person to anything that happened prior to the date of the death of such person, and this statute includes not only those who have died, but anyone who is non compos mentis. Counsel for plaintiff contends that by taking the discovery deposition of the plaintiff, Stricker, at a time when the defendant, Morgan, was sane, that the privilege was thereby waived, but cites no applicable authorities to sustain that position. The case of Veazey v. Turnipseed, 219 Miss. 559, 69 So.2d 379, disposes of that contention. If counsel for defendant had introduced the discovery deposition in advance of the lawsuit it is possible that he would have waived the privilege, but not having used it in any way in the trial of the case on its merits, he did not waive the privilege.

The transaction for the land was carried in the personal ledger of the defendant, Morgan, and separate and apart from the timber deal. As early as December, 1941 an oil, gas and mineral lease was executed by the defendant, Morgan, and he received the bonus, delay rentals and royalties from this lease and they were recorded in his personal ledger. The plaintiff, so far as the record shows, made no immediate claim on Morgan as to any interest in the land, but along about 1944 or 1945 he began to assert a claim to a one-half interest in the land. At that time, in 1945, the defendant, Morgan, definitely advised the plaintiff that he, plaintiff, had no interest whatever in the land. This was done by letter of January 20, 1945 from the defendant to the plaintiff. With this knowledge, the plaintiff took no action until 1955, when this suit was filed.

As hereinbefore stated, there were some ten, eleven or twelve transactions between the defendant, Morgan, and the plaintiff, Stricker, some of which were between them alone, and others involved third persons. Each of these transactions was separate and distinct from the other, was based upon a separate understanding, and there was a balancing of the accounts between the plaintiff and defendant from time to time, with the gains made from one transaction being used to satisfy an indebtedness originating from a different one. No partnership books were set up or kept as such, but each, the plaintiff and the defendant, kept his own individual set of books with reference to the dealings between them, as well as with reference to dealings between each of them and disconnected individuals. Each of the transactions was gone into in detail and at great length for the purpose of undertaking to prove that a partnership existed, but these other transactions varied in many respects and indicate—and the fair inference is—that each one was based upon an agreement made at the particular time of acquiring the timber or the timber and the land. Of course, in several instances only timber was acquired, in some instances the timber and the land were acquired, in other instances a third party was taken in, and in one instance the plaintiff declined to go into a transaction for the reason that he disliked a third party who was involved in it.

When the Walnut Grove or Gack property was initially purchased the amounts paid by Morgan on account of the purchase price were handled in this way: There was a draft by Stricker and Berry drawn on the Louisiana Box & Lumber Company for $7,500; this draft on the

Louisiana Box & Lumber Company was taken up by the personal check of Morgan, which $7,500, supplemented by the $2,500 paid by one Ransome on an option to purchase timber on that tract, made up the initial cash payment for the property and Morgan gave his note for $15,000 to cover the balance of the purchase price. This $15,000 was subsequently paid by personal check of Morgan on the Whitney National Bank for $13,225, the balance of the purchase price being paid from cash receipts from timber and property sold off of this tract.

The purchase of the McKellar timber was for $49,000 and was handled in a different manner. In the purchase of the Bramlette timber the vendor was paid the consideration by check of the Louisiana Box & Lumber Company on the Whitney National Bank in the sum of $23,500 and on the records of the Louisiana Box & Lumber Company this expenditure was charged to logs, was entered in Morgan's personal records and thereafter carried on his ledger as a charge which he was entitled to be repaid out of the property and against which receipts from the property were credited. The Artonish Plantation was a purchase of land including the timber, the consideration was paid by the personal check of J. P. Morgan and the amounts were entered as debits on Morgan's personal ledger, as were the interest charges, attorneys' fees and other charges; and on the credit side of the ledger were entered proceeds of sale of logs from Artonish to the Louisiana Box & Lumber Company.

I shall not undertake to detail these various transactions in other tracts, as they are disclosed without much dispute in the record. There was one transaction wherein a third party, Berry, was interested, and another transaction wherein a third party, Wax, was interested, and in which there was a partnership between Wax and Stricker in some farming interests, but completely disconnected from ownership of land or timber. It was in the Walnut Grove tract, also known as the Gack tract, that Berry was interested. Stricker and Berry acquired title from the former owners of the property and placed the title in Morgan as to the land and timber in 1935, and except for $2,500 procured from W. A. Ransome Lumber Company on option for certain sizes and species of the timber, the purchase price was paid by Morgan. Out of the sales of the timber and some tracts of land from that property all the costs, charges and interest had been repaid to Morgan by May 11, 1936. In the meantime Berry having died, Stricker and Morgan acquired his interest in the property for the agreed consideration, which was paid by Morgan to Berry's widow. In 1944 Morgan conveyed to Stricker a half interest in the Gack tract and, so far as the record shows, they still own a half interest in that tract.

The fair inference from all of this testimony is that each transaction was separate and distinct within itself and was based upon an understanding between Stricker and Morgan, and if third parties were included, on the understanding with them, and contracted only as to that particular transaction. The mere fact that they acquired real estate together and from the sale of it made a profit and divided the gains does not make them partners in the business, even if oral testimony were admitted to prove the partnership with reference to the ownership of land. Plaintiff and defendant each was an experienced business man, Stricker experienced in the timber business and Morgan experienced in the manufacturing business and other commercial lines. Morgan depended, to a large extent, on Stricker to locate timber tracts for his business and would either pay him a commission for the purchase and handling of the timber or, if there was a gain on the sale of timber, would divide the gain with him. Taking all the testimony as a whole, it is far from proving any partnership between the two men. While it is true that there are several statements against interest made by Morgan, wherein he referred to Stricker in letters to Stricker as his

partner, and in some letters to third parties referred to him as his partner, yet taking all the correspondence in its entirety, it is clear that he had no conception of the meaning thereof and that, as a matter of fact and law, they were not partners. Their conduct indicates to the contrary. There were no partnership information returns filed with the Internal Revenue Department; there were no books of partnership set up; there were no written articles of partnership and there is nothing in the record to indicate what any terms of such partnership could have been between them. The books of Stricker, himself, the reports he made to the Internal Revenue Department on his tax returns, and his statement as to the interest in oil or mineral lands that he owns are strong circumstances against his present contention. Taking the evidence in its entirety it fails completely to show that he had any interest in any part of the plantation other than in the timber. To hold that there was an agreement between him and Morgan that he would have a one-half interest in the land would be purely a guess or conjecture and certainly when a court is dealing with real estate or rendering a judgment thereon it is necessary that such judgment be supported by evidence which shows with a reasonable degree of certainty that the party is entitled to such judgment. In making transfers of real estate the law requires that the understanding be clear and, with very few exceptions, must be in writing. In the present case there was no written document by which the defendant agreed to convey to the plaintiff a one-half interest in the land, nor that the plaintiff has a document showing that the defendant would take title in himself for the benefit of himself and the plaintiff, but the circumstances point strongly to the contrary.

To epitomize and state more concisely my findings of fact and conclusions of law, and without detracting from anything I have hereinbefore said, I now make the following findings of fact and conclusions of law:

## Findings of Fact and Conclusions of Law

Plaintiff was familiar with the large timber tracts in and around Wilkinson County, Mississippi along the Mississippi River and had been engaged in the business of buying and selling timber for a great many years. Defendant was engaged in the manufacture of boxes and operated a sawmill in Kenner, Louisiana. The mill and box factory were operated as a corporation by defendant under the name of Louisiana Box and Lumber Company, Inc., defendant obtaining ownership of the stock of this company in the year 1930. In 1939 defendant dissolved the corporation and a partnership was formed for the operation of Louisiana Box and Lumber Company composed of defendant, his son, Eddie C. Morgan, and Fred N. Owen.

As early as 1922 the Louisiana Box and Lumber Company was purchasing some of the timber for its sawmill from plaintiff. These purchases continued until the year 1943, when Louisiana Box and Lumber Company discontinued the operation of its sawmill, relying on suppliers of ready-cut lumber for materials for construction of its boxes. During this period of time plaintiff also sold and handled numerous timber transactions for many individuals and lumber companies.

Commencing in the year 1935, plaintiff and defendant entered into a number of transactions together. There were some ten or eleven transactions between the parties, not including the Esperance Plantation, from which this action arises. The first of these eleven transactions took place in the year 1935 and the last in the year 1942. Plaintiff alleges that as a result of these transactions a partnership agreement arose between him and defendant.

An analysis of these transactions shows that six involved the purchase of timber alone from various tracks in Louisiana and Mississippi. Five of these six timber transactions had a third party involved besides plaintiff and defendant. The ratio of participation in

the profits from these six timber transactions was different as between the parties involved. In only one of the six transactions involving the purchase of timber were plaintiff and defendant alone concerned and that was the Cole's Creek or Beavin timber in Jefferson County, Mississippi. Plaintiff's record of the Cole's Creek timber purchase transaction shows that he borrowed the sum for the purchase of the timber from the defendant and later sent defendant a check for $500 for his participation in this deal.

Four of the five remaining transactions in which plaintiff and defendant participated involved the purchase of timber lands in Wilkinson County, Mississippi. One transaction had no interest vested in plaintiff, but plaintiff had been offered an interest by the defendant, which he refused because of the presence of a third party in the deal whom he disliked. Of the four other transactions involving the purchase of timber lands, third parties participated in three of the transactions. Plaintiff and defendant participated alone in only one transaction in the purchase of timber lands.

There was no partnership or joint bank account set up on any of the transactions. The books and records kept upon the various deals between plaintiff and defendant and others were kept separately and often by different parties. Any report or account transmitted between the parties on any deal was separate and distinct from any other transaction between the parties. Each of the various transactions entered into by plaintiff and defendant stood on its agreement and was not in any way inter-related with any of the other transactions.

There were no partnership informational tax returns filed by plaintiff or defendant for any income received from any partnership operation by these two parties. The fair inference from all the facts, circumstances and conduct of the parties is that there was no general partnership agreement in existence between plaintiff and defendant, nor did any such

relationship arise from the dealings between the parties. Plaintiff accepted additional commissions and bonuses in the negotiation of oil, gas and mineral leases in transactions in which plaintiff and defendant were involved. These commissions and bonuses were over and beyond the share of defendant in the bonus and delay rentals from these leases. Plaintiff never accounted to defendant for these commissions, nor did he offer to share them with defendant.

The total consideration for the Esperance Plantation was $21,500 for the timber and $5,000 for the land. In payment, two checks of Louisiana Box and Lumber Company in the total amount of $21,500 were issued, signed by its bookkeeper, for the timber. Defendant issued his personal check in the sum of $5,000 for payment for the land. Deed to the property from Campbell to defendant was dated December 30, 1940. However, the checks issued in payment for the timber, as well as the check of defendant for the land, were dated January 13, 1941.

The softwood timber on Esperance Plantation was acquired by Louisiana Box and Lumber Company for use in its mill. However, it went out of the sawmill business before it could use the softwood timber and the entire timber on Esperance Plantation was sold to the General Box Company in 1947. The Esperance timber was at all times treated as an asset of Louisiana Box and Lumber Company, carried upon its books and records, and taxes due on the profits made from the sale of the timber reported in its income tax returns for the year 1947.

On the other hand, the Esperance land investment of $5,000 was carried in the personal ledger of defendant, separate and apart from the timber. An oil, gas and mineral lease was executed by defendant in December of 1941 and the bonus delay rentals and oil royalties from this lease were recorded in the personal ledger of defendant. Defendant at all times kept his investment in the Esperance Plantation separate and apart

from the timber owned by Louisiana Box and Lumber Company.

At the time of the sale of the timber on the Esperance Plantation all items of costs and ad valorem taxes attributable to the timber were applied against the total sales price of the timber. Plaintiff made a detailed analysis of the taxes and expenses as applicable to the timber on Esperance Plantation and refused to bear any part of the expenses or ad valorem taxes as were applicable to the Esperance land. The profits from the sale of the Esperance timber were divided equally between plaintiff and Louisiana Box and Lumber Company.

■ Plaintiff's claim to an interest in the land is based largely upon the allegation that there was a partnership relationship existing between him and defendant in the operation of the Esperance Plantation. It is basic and fundamental that where the title to real property is in issue or where the validity and effect of contracts concerning the title to such land is in issue, the court must apply the law of the state of the situs of the real property. See Freedman v. Massachusetts Mut. Life Insurance Co., 6 Cir., 1936, 81 F.2d 698 and Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Philadelphia Inquirer Co., 3 Cir., 1928, 25 F.2d 701. Here the land in question is located in the State of Louisiana and therefore rules of law of that state will here apply.

■ Plaintiff cannot establish title to real property in Louisiana by parol evidence. The deed to the Esperance property was made solely between Campbell and defendant. Section 2275 of the LSA–Civil Code provides that every transfer of immovable property must be in writing. Section 2276 of the LSA–Civil Code further provides that parol evidence is not admissible to prove against or beyond what is contained in the acts of the parties nor on what may have been said before the acts or at the time of the acts or since. The deed to the Esperance Plantation was from Campbell to defendant alone. Plaintiff cannot by the review of disconnected transactions and deals between the parties establish title to the Esperance Plantation. See Harvey v. Richard, 1942, 200 La. 97, 7 So.2d 674 and Cernich v. Cernich, 1946, 210 La. 421, 27 So.2d 266; also Prescott v. Prescott, 1930, 170 La. 233, 127 So. 611.

■ Under the laws of the State of Louisiana I find there can be no partnership in the Esperance Plantation between plaintiff and defendant in the absence of a proper written agreement. Section 2836 of the LSA–Civil Code expressly sets out that if any part of the stock of a partnership consist of real estate, the agreement must be in writing. Moreover, the writing must be made and recorded according to the rules prescribed for the conveyance of real estate. Sections 2846, 2847 and 2848 of the LSA–Civil Code. Plaintiff did not allege the existence of any written articles of partnership between him and defendant nor was any introduced into evidence. Under these facts there could be no partnership agreement between plaintiff and defendant in reference to the Esperance Plantation. Gadlin v. Deggs, La.App. 1945, 23 So.2d 704. Succession of Chapman, 1954, 225 La. 641, 73 So.2d 789.

■ Plaintiff further contends that in the event he had no partnership agreement with defendant in the Esperance Plantation, that he and defendant were joint adventurers in the transaction. Plaintiff fails to establish the relationship of joint adventurer with defendant for the same reasons that he failed to establish a partnership agreement with defendant. In Louisiana the relation of joint adventurers is governed by the principles which constitute and control the law of partnership. Illinois Central Railroad Co. v. Pope Construction Co., La.App.1956, 90 So.2d 139. Joint adventurers in land in Louisiana require written articles of agreement properly recorded as in the case of a partnership. Sections 2836, 2846, 2847 and 2848 of the LSA–Civil Code. If the relationship between plaintiff and defendant were that of joint adventurers, plaintiff cannot introduce parol evidence

to prove an interest to the land in Louisiana. Stack v. De Soto Properties, 1952, 221 La. 384, 59 So.2d 428. Cernich v. Cernich, 1946, 210 La. 421, 27 So.2d 266. Sections 2275, 2276 and 2440 of the LSA–Civil Code.

A third contention advanced by plaintiff was that in the event he be not partner or joint adventurer with defendant in the Esperance Plantation, then he was entitled to a one-half interest in the land from a resulting trust. This contention must fail as plaintiff did not contribute any part of the purchase money for the Esperance Plantation. The Bill of Complaint specifically alleges, and the proof shows, that the defendant paid the entire consideration and plaintiff made no contribution thereto. It is a basic and fundamental rule of law that the claimant of a resulting trust must contribute to the purchase money at the time of the conveyance. Pomeroy, Equity Jurisprudence, Bancroft Whitney Company, 5th ed., 1941, Vol. 4, p. 72.

In short I make the following findings of fact and conclusions of law:

1. There were no written or oral articles of partnership agreement between plaintiff and defendant as concerns the operation of Esperance Plantation nor did such agreement arise from a course of dealings between the parties. Plaintiff knew and understood that he had no interest in Esperance Plantation beyond a participation in the profits from the sale of the timber.

2. In all his dealings with defendant plaintiff conducted himself as a broker or middleman and accepted a commission or bonus from others in negotiating sales or oil and gas leases for other parties or property in which defendant had an interest with plaintiff.

3. Plaintiff within his books and records or upon his income tax returns never treated any income received from the various deals and transactions between him and defendant as partnership income. Moreover, the method of handling the transactions by the parties negatives the existence of any partnership agreement between plaintiff and defendant.

Each transaction stood on its own facts and was separate and distinct from any other transaction.

4. Plaintiff knew and understood from the date of the purchase of the Esperance Plantation that he had no interest in the land beyond a share in the profits from the sale of the timber.

5. Plaintiff claimed no ownership of the Esperance land in a letter in 1948 to the Internal Revenue Service, nor in the oil, gas and mineral lease existing on the land.

6. Defendant has had the record title and has been in full, open possession of the Esperance Plantation since December 30, 1940 and has exercised all incidents of ownership in connection with the Esperance land from that date.

The plaintiff having failed to meet the burden of proof and show by a preponderance of the evidence that he is entitled to recover, the complaint will be dismissed at the cost of plaintiff.