R. M. STRICKER, Appellant,

v.

J. P. MORGAN et al. (Mrs. Margaret Koehler Morgan, Edward C. Morgan and Evelyn Morgan Wiemer, substituted as appellees in the place and stead of J. P. Morgan, deceased), Appellees.

No. 17570.

United States Court of Appeals Fifth Circuit.

Aug. 6, 1959.

Rehearing Denied Sept. 30, 1959.

---

3. This is the test approved in Krulewitch v. United States, supra.

Gerard H. Brandon, Natchez, Miss., Edwin Leland Richardson, Baton Rouge, La., Clay B. Tucker, Woodville, Miss., Gerald N. Sims, Vidalia, La., Dale Richardson & Dale, Baton Rouge and Vidalia, La., Brandon, Brandon, Hornsby & Handy, Natchez, Miss., for appellant.

C. Delbert Hosemann, Vicksburg, Miss., Edmund L. Brunini, Jackson, Miss., William H. Talbot, New Orleans, La., Brunini, Everett, Grantham & Quin, Vicksburg, Miss., for appellees.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether the court below, sitting without jury, was clearly erroneous in holding that plaintiff-appellant R. M. Stricker had not sustained the burden of proving that he was entitled to a decree against defendant-appellee J. P. Morgan,[1] confirming in plaintiff title to an undivided one-half interest in Esperanza Plantation in Concordia Parish, Louisiana, and ordering an accounting for oil rentals and royalties and other income derived from said plantation. Plaintiff charged that he was entitled to said relief under the claim that there was a profit and loss sharing agreement between him and defendant making them partners or joint venturers with respect to said plantation, or creating as to it a constructive or resulting trust in said land as between him and defendant. This relationship,

---

1. Morgan was, during the course of the trial, declared non compos mentis and his wife Margaret, Curatrix of his person and estate, was substituted as defendant in his place and stead. Subsequent to the entry of the judgment below and to this appeal, he died and his heirs were substituted as appellees.

The suit originally included as defendants Magnolia Petroleum Company, Interstate Pipe Line Company and Esso Standard Oil Company. An order of dismissal has been entered as to Interstate. Magnolia and Esso are merely garnishee defendants under the Mississippi Chancery Attachment Statutes—this suit having originated in the Chancery Court of Wilkinson County, Mississippi.

The word defendant whenever herein used, unless the contrary is indicated, refers to said Morgan or said Curatrix, the main defendant, according to the facts existing at the time.

by whatever name called, was, under the plaintiff's claim, created by a course of dealings beginning in 1935 and continuing through the time when title to said plantation was vested by deed in the defendant.[2] Defendant denied the existence of such a general agreement, claiming that each of the several deals between them rested entirely "on its own bottom."

Plaintiff asserts that the contract between him and defendant was a Mississippi contract controlled by its laws, but argues that he is entitled to the same relief even if the laws of Louisiana are applied. Defendant stands on the argument that plaintiff is not entitled to any relief, because his relationship with plaintiff was governed by Louisiana law, which barred plaintiff's recovery because the contract was not in writing. Another sharply contested point of law related to whether the court below correctly declined to permit plaintiff to testify under the Mississippi "Dead Man's Statute." [3]

■ In an exhaustive, well written and documented opinion the district judge decided all of the issues in favor of defendant and against plaintiff, and reference is made to his opinion in the case of Stricker v. Morgan, D.C., 158 F.Supp. 830.[4] The facts are fully and fairly stated in said opinion and no good

2. Plaintiff's argument is thus epitomized in his brief:

"On or about November 16, 1935, Stricker and Morgan entered into a profit and loss sharing contract and agreement which created a status between them that has been denominated by them as a partnership. * * * No formal written articles of agreement were executed by the parties. The agreement is evidenced by many instruments, memoranda, communications, accounts and other items in writing, by the acts and conduct of the parties between themselves and with others and their various transactions shown in this record, as will be hereinafter cited. The record discloses that this contract and agreement had its inception on or about November 16, 1935, and that the agreement as finally made between the parties Stricker and Morgan was to the effect that Stricker, who had an expert knowledge of timber, timber lands and plantations, would locate, as opportunity should be presented, various tracts of land and timber that in his opinion could be purchased, managed and handled on a profitable basis; that he would have the timber on said lands cruised and, as and if he should consider the same a profitable purchase, he would present the matter of the purchase to the consideration of Morgan; that upon approval of such purchase by Morgan on the recommendations of Stricker, Morgan would advance and pay all of the purchase price, costs and expenses of acquisition and operation of the properties, including taxes, attorneys' fees and other expenses, and title to all of such properties purchased should be taken in the name of Morgan; that thereafter Stricker would look after, manage and control the property, make all contracts for cutting and removing timber therefrom, tend to logging and rafting the timber for delivery to Morgan at Louisiana Box & Lumber Company, Kenner, Louisiana, of such of the logs as Morgan for his mill would require and making contracts for the sale of other logs and timber to others, selling the lands, leasing the same, negotiating oil, gas and mineral leases thereon, managing and conducting all operations on the said lands and otherwise generally managing the same; and that when from the proceeds of timber and other business operations thereon sales of parts of land, leases on same, etc., Morgan should be repaid the amount of his cash outlays and interest at Six Per Cent (6%) per annum thereon, all profits should be divided, share and share alike, between Stricker and Morgan, and ultimately Morgan would convey to Stricker an undivided one-half (½) interest in the land or timber or land and timber as the case might be, Stricker and Morgan agreed to share profits and losses, share and share alike. It was further understood and agreed as a part of the contract that in such instances as it might be or become desirable to include some other person or persons in the purchase and acquisition of any lands or timber or lands and timber, that such should be done by mutual consent and such other person or persons be accorded a like interest and share or such interest and share as might be agreed upon."

3. Mississippi Code of 1942, § 1690.

4. The opinion, including the findings, was filed Jan. 23, 1958 and the final judgment filed Feb. 4, 1958, dismissed the com-

purpose would be served by repeating them here. A reading of the briefs and this voluminous record fails to convince us that the court below was clearly erroneous in its findings of fact, which are thus summarized on the last page of the opinion (at page 842):

"There were no written or oral articles of partnership agreement between plaintiff and defendant as concerns the operation of Esperanza Plantation nor did such agreement arise from a course of dealings between the parties. Plaintiff knew and understood that he had no interest in Esperanza Plantation beyond a participation in the profits from the sale of the timber.

"In all his dealings with defendant plaintiff conducted himself as a broker or middleman and accepted a commission or bonus from others in negotiating sales or oil and gas leases for other parties or property in which defendant had an interest with plaintiff. * * *

"Plaintiff knew and understood from the date of the purchase of the Esperanza Plantation that he had no interest in the land beyond a share in the profits from the sale of the timber. * * *

"Defendant has had the record title and has been in full, open possession of the Esperanza Plantation since December 30, 1940 and has exercised all incidents of ownership in connection with the Esperanza land from that date.

"The plaintiff having failed to meet the burden or proof and show by a preponderance of the evidence that he is entitled to recover, the complaint will be dismissed at the cost of plaintiff."

These facts as found by the court would require a judgment for the defendant whether the rights of the parties were governed by Mississippi law or by Louisiana law. Even if we accept that the general course of dealings between the parties gave rise to a series of "deals" amounting to partnerships, joint ventures or trusts, resulting or constructive, justifying the application of the liberal rules plaintiff conceives to be followed by the Mississippi courts,[5] plaintiff would still proceed throughout under the burden of establishing the terms of the particular contract between him and the defendant with respect to the Esperanza Plantation. Plaintiff concedes, as he must and as is illustrated by the quotation from his brief, footnote 2 supra, that every transaction between him and defendant was different from every other transaction. That is exactly what the court below declared:[6] "The fair inference from all of this testimony is that each transaction was separate and distinct within itself, and was based upon an understanding between Stricker and Morgan, and if third par-

---

plaint *in toto*. Plaintiff moved that both be amended and, by amended findings and judgment filed April 23, 1958, the court modified the judgment first entered by requiring defendant to execute a deed conveying to plaintiff an undivided one-half interest in all of the timber growing on Esperanza Plantation on Dec. 30, 1940, and to account to plaintiff for one-half of money derived from the sale of said timber. Defendant did not contest this modification.

June 17, 1958, defendant filed notice of compliance with said amended judgment, attaching copy of deed dated May 26, 1958 conveying to plaintiff said one-half interest in said timber. June 26, 1958, plaintiff filed a response asserting that plaintiff would not accept but was returning said deed, because he declined to accept performance of part only of the relief to which he was entitled. The record shows that the Esperanza timber was sold to General Box Company in 1947 for $87,000.00 and that distribution of this sum was made between plaintiff and defendant. Notice of appeal by plaintiff had been filed April 28, 1958.

**5.** Such as the principles established in Sample v. Romine, 1942, 193 Miss. 706, 8 So. 2d 257; McCartney v. McKendrick, 1956, 226 Miss. 562, 85 So.2d 164; and cf. Baker v. Nason, 5 Cir., 1956, 236 F.2d 483.

**6.** D.C., 158 F.Supp. 838.

ties were included, on the understanding with them, and contracted only as to that particular transaction."

Plaintiff discusses eleven transactions between the two in addition to the Esperanza deal and, in some of them, plaintiff was interested in the timber alone, not in the land, and in others, neither of them acquired any interest in the land. The ultimate question for decision by the court below, therefore, was whether in the Esperanza transaction plaintiff acquired an interest in the land or an interest in the timber only. The trial court had before it testimony of witnesses who were present when the Esperanza agreement was discussed and was closed and, in addition, it heard much evidence, record and otherwise, of circumstances throwing light upon the parties' dealings; and it heard and considered a number of admissions against interest by both parties along with statements and actions constituting construction by the parties of the arrangement between them. From all of this evidence the court reached the definite conclusion that the Esperanza deal was separate from all the others, that the timber was purchased with funds of Louisiana Box and Lumber Company [7] and was held by defendant for the joint benefit of plaintiff and said company, that the land was purchased by defendant, and that plaintiff acquired no interest therein; and that the oil, gas and mineral rights, being a part of the estate in the land itself, were the property of the defendant free from any claim of the plaintiff.

The conclusions reached by the court below were required by law if the facts found by it were supported by the evidence; so that the fundamental question before us remains throughout whether its findings of fact were clearly erroneous. As heretofore stated, we think that its findings were supported by credible evidence. The factual situation with which it dealt was quite involved and the court set forth its findings clearly and in detail in its published opinion. Being convinced from a careful examination of the record and the exhibits that the findings were justified, we decline to set them aside under the clearly erroneous rule.[8]

■ Plaintiff urges that it was error for the court below to deny him the right to testify upon objection by defendant that his testimony was inadmissible under § 1690 of the Mississippi Code of 1942, commonly known as the "Dead Man's Statute;"[9] and that his testimony would have influenced the court to find the facts in his favor. When plaintiff was offered as a witness defendant objected, invoking the protection of the statute; and extensive proceedings were had before the court below made its ruling. These included a comprehensive stipulation dictated by the attorneys into the record, by which plaintiff attempted to establish that defendant had waived the right to rely upon the Mississippi Statute by taking plaintiff's deposition and utilizing the information developed therefrom in preparation for the trial and in developing his proof.[10]

---

7. Until 1939, a corporation owned by defendant Morgan; thereafter a partnership owned by him, his son and an employee named Owen.

8. Rule 52(a), F.R.Civ.P., 28 U.S.C.A.

9. "§ 1690. Claimant against estate of decedent or person non compos mentis.
   "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death

of such decedent. * * * Nor shall a person testify as a witness to establish his own or assigned claim or defense against the estates of a person of unsound mind, which originated before the ward became a non compos mentis. * * *"

10. The facts constituting the basis for the claimed waiver are thus epitomized in plaintiff's brief:
   "Defendant procured the taking of Stricker's deposition on March 23, 1956. This suit was filed October 15, 1955. Counsel for Defendant made no effort to take the deposition of or perpetuate the

Plaintiff also dictated into the record a showing of what Stricker would testify if placed on the stand,[11] and also introduced in evidence the discovery deposition which had been taken and filed by defendant, but not offered in evidence by him.

The court below, as stated, sustained the objection to the competency of Stricker as a witness, basing its ruling chiefly (D.C., 158 F.Supp. 837) upon the Mississippi case of Veazey v. Turnipseed, 219 Miss. 559, 69 So.2d 379, 383. A reading of that case will demonstrate the correctness of the trial judge's estimate of it.[12]

testimony of Morgan. Although Plaintiff had sought to take the deposition of Morgan at the same time Defendant took the deposition of Stricker, the Plaintiff deferred to the request of Defendant to delay the taking of the deposition because of Morgan's illness. Morgan having recuperated, it was agreed that his deposition be taken on August 23, 1956.

"On August 11, 1956, counsel for Defendant served notice that Morgan had become non compos mentis and hence that his deposition could not be taken.

"Thereafter on September 19, 1956, counsel for Defendant Morgan filed in this cause the said deposition of Plaintiff Stricker which they had taken on March 23, 1956 * * *

"Morgan was not interdicted until thereafter, i.e., on November 20, 1956, and record of interdiction was not filed herein until January 15, 1957. * * *

"Defendant Morgan utilized the deposition of Plaintiff Stricker in preparation of his defense of this suit, in procuring records and files of the Plaintiff which were offered thereafter in evidence by the Defendant, and by motion * * * required and procured of Plaintiff the production and filing in court * * * of further records from the files of the Plaintiff, and including the

" '1. Black memorandum notebook used by the Plaintiff to refresh and recollect his memory during the taking of Plaintiff's deposition on the 23rd of March, 1956 * * *'

"Prior to the time when counsel for Plaintiff offered the Plaintiff Stricker as a witness in his own behalf, the Defendant, in the course of this trial, had offered in evidence, and had adduced testimony pertaining to, certain documents and letters procured by Defendant from the records and files of the Plaintiff, including letters written by the Plaintiff, * * * and cross-examined Mr. John Dale, Jr., one of counsel for Plaintiff with regard to the deposition of Stricker."

11. In effect it was represented that plaintiff would testify to facts that would establish the allegations of his complaint, to a course of dealings between himself and defendant over many years extending prior to 1935 down to this time, and to the fact that they did form and enter into partnership transactions and became co-partners on an arrangement whereby Stricker, being a practical timber man and familiar with timber locations, etc., would ascertain that lands and timber were available to purchase, and that defendant Morgan would produce the capital, and that as soon as Morgan was repaid his capital investment, the properties would be shared; and that the partnership extended over the years and to the time of trial.

12. These disconnected excerpts from the decision will serve to show its applicability here, 69 So.2d 383–384:

" * * * Nor was there any waiver by appellees of appellant's incompetency merely because Mrs. Perkins was permitted to testify concerning admissions against interest by Veazey. When a litigant introduces statements by an adversary against his own interest, this does not constitute a waiver of Section 1690 so as to make the adversary a competent witness. A good illustration of this arose in Martin v. Martin's Estate, Miss., 1953 [217 Miss. 173], 63 So.2d 827, where appellant claimed to be the common-law wife of Peter Martin, deceased, and therefore, sought to renounce his will. Appellee introduced income tax reports of appellant in which she stated that she had no husband. Many witnesses testified that appellant always referred to herself as Mrs. Moore, and not Mrs. Martin, and that she introduced herself as Mrs. Moore the housekeeper and not Mrs. Martin. The court expressly rejected the argument that such evidence for appellee waived appellant's incompetency under Section 1690 to testify for her claim against the estate.

"Appellant further contends that Veazey was competent to testify as to what he did with the [will] after Mrs. Perkins delivered it to him. However, such testimony would be directly in the face of the prohibition of Section 1690, and would support Veazey's claim against the estate of Mrs. Smith. * * * Appellant

Plaintiff relies upon four Mississippi cases,[13] but we do not find any of the cases at war with the holdings of Veazey, supra, and they do not, in our opinion support plaintiff's position. Plaintiff also cites three cases by federal courts, chief reliance being placed upon Mutual Life Insurance Co. v. Green, D.C.Ky., 1941, 37 F.Supp. 949. A reading of that case shows that the United States District Judge ruled that the incompetency of a witness was waived by the taking prior to the trial, and filing during the course of the trial, of the deposition of the person claimed to be an incompetent witness. The court discussed a large number of decisions of the state courts of Kentucky, and concluded that they were in conflict. The ruling was based entirely upon state court decisions concerning the Kentucky Statute. That was, of course, in obedience to Rule 43(a) F.R.C.P.[14] The court below properly held itself bound by the statute of Mississippi as construed by

the Mississippi courts. It is clear under the Federal Rules [15] that the taking of the deposition under the circumstances disclosed by the evidence did not constitute a waiver of the protection of the Mississippi statute.[16]

This case was presented to the court below—as well as to us—with unusual skill and diligence by the attorneys on both sides. The trial lasted many weeks. and recesses were taken so that the parties would have the best possible opportunity to make the fullest presentation of their evidence. The record presents. a typical case for the application of the rule which invests the findings of fact. by the trial court with the weight which attends the regard appellate courts accord to its opportunity to judge of the credibility of the witnesses.

Being unable to say that the findings of the court below, so well and fully stated by it, are clearly erroneous, its judgment is

Affirmed.

admits that Veazey received the instrument from Mrs. Perkins. We hold that the learned trial court was correct in ruling that he was incompetent to testify either that he gave the will to Mrs. Smith or that if Mrs. Perkins gave him the will, whatever she gave him he gave it to Mrs. Smith. * * * "

13. Waldauer v. Parks, 141 Miss. 617, 106 So. 881; Birchett v. Hundermark, 145 Miss. 683, 110 So. 237; Fant v. Fant, 173 Miss. 472, 162 So. 159; and Stuckey v. Sallis, 221 Miss. 698, 74 So.2d 749.

14. " * * * All evidence shall be admitted which is admissible * * * under

the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. * * * The competency of a witness to testify shall be determined in like manner."

15. E.g., Rule 26(f).

16. Cf. 4 Moore's Federal Practice, 2d Edition, Par. 26.02, and Anderson v. Benson, D.C.Neb.1953, 117 F.Supp. 765, and Duling v. Markun, 7 Cir., 1956, 231 F.2d 833, same case 1958, 251 F.2d 361.