[No. 16243.    Department One.    April 15, 1921.]

ARTHUR PERCY, as *Administrator etc., Respondent*, v. EMMA MILLER et al., *Appellants*.[1]

WITNESSES (48-2)—COMPETENCY—TRANSACTIONS WITH DECEASED—EFFECT OF EXAMINATION BY ADVERSE PARTY. The prohibition in Rem. Code, § 1211, against a party in interest or to the record testifying concerning a transaction with a decedent, where the other party sues or defends as the personal representative of such decedent, was not waived by the fact that, in a prior inquisitory proceeding, the party seeking to testify had been examined as a witness by the personal representative, under Laws 1917, p. 670, §§ 101, 102, to discover property of the decedent, where no part of the record of that examination had been introduced in evidence in the later proceeding.

EXECUTORS AND ADMINISTRATORS (152)—ACTIONS—EVIDENCE—OWNERSHIP OF DECEASED. In an action by an administrator to recover property of the estate, it was admissible to prove possession and control of the property by decedent a short time prior to his death as evidence of his ownership.

[1]Reported in 197 Pac. 638.

DAMAGES (30, 31)—EXPENSE OF LITIGATION—ATTORNEY'S FEES. Laws 1917, p. 670, § 101, providing for the recovery of damages against any person embezzling or alienating the property of an estate, does not contemplate attorney's fees as a part of such damages, the matter of attorney's fees being regulated by another statute.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered May 17, 1920, upon findings in favor of the administrator, in an action to recover certain property and for damages, tried to the court. Reversed.

*Blackburn & Gielens,* for appellants.

*Rex S. Roudebush,* for respondent.

FULLERTON, J.—Warren E. Percy died testate in Pierce county on April 8, 1919. He left as heirs at law a son and three daughters, all of whom were named as devisees of his will. For some five years preceding his death, the deceased made his home with his daughter, Emma Miller, and died at her home. A short time after his death the daughter Emma Miller produced the will from her father's effects. In the will, one A. C. Miller, husband of Emma Miller, was named as executor. The will was read at a meeting of the devisees at which the executor named therein was present. At this time the executor named declined to act as administrator, and the daughters asserted that the decedent left no property on which the will could act, and that its probate would be only an idle ceremony.

Some few months thereafter, the son, claiming to have discovered property left by his father in the possession of certain of his sisters, petitioned the court for his own appointment as administrator with the will annexed. This petition, the court, after notice and hearing, granted.

After his appointment as such, the administrator instituted proceedings under §§ 101 and 102 of the probate code (Laws of 1917, p. 670, ch. 156), against his sisters and their husbands, requiring them to appear before the probate court and answer such questions as might be propounded to them touching the property of which the decedent died seized. They appeared in answer to the citation served on them, and, in so far as this record discloses, answered fully all such questions as were put to them at the hearing.

Thereafter the administrator, with leave of court, brought the present action against the parties last mentioned, averring that his father had died seized of personal property consisting of cash, United States government bonds, and notes or drafts, of the value of twenty-five hundred and fifteen dollars; that such property was held by Emma Miller either for herself, or for herself and the other defendants named, and that she had refused to turn the same over to the administrator on his demand therefor. He also alleged that the refusal of Emma Miller to turn over the property belonging to the estate on his demand had made it necessary to institute the action to recover the property, and necessary to employ counsel for that purpose, and that the reasonable value of the legal services which were and would be rendered in the action was five hundred dollars, which the estate became liable to pay and in consequence was damaged in that sum. The prayer of the complaint is for a recovery of the property and for damages in the sum of five hundred dollars.

Issue was taken on the complaint, and a trial had before the court sitting without a jury, which resulted in a judgment for the administrator in accordance with the prayer of his complaint.

The appellants first assign that the court erred in rejecting certain testimony. Mrs. Miller was called to the witness stand, and through her the appellants sought to show that the deceased had prior to his death given her the property in question. This evidence the trial court rejected. They then offered the record of the inquisitory proceeding, and with it the testimony of the several witnesses testifying in the proceeding. This evidence the court also rejected.

The appellants, while conceding that the evidence would otherwise have been within the rule of 'the statute (Rem. Code, § 1211), which provides that a party in interest or to the record shall not be permitted to testify concerning a transaction had with a deceased person where the other party sues or defends as executor, administrator or legal representative of such person, contend that the rule is without application here because the administrator waived the provisions of the statute by reason of the proceedings instituted by him before the court sitting in probate. But we think the ruling of the court was without error. Undoubtedly, had the administrator offered in evidence the answers given by the witness to the questions asked of her at the probate hearing, she would have been privileged to have testified to any fact to which the questions and answers referred, and possibly to the entire transaction; but we are clear that the mere fact that the witness was so examined did not operate as a waiver of the rule of the statute in any subsequent proceeding which the administrator might institute against her. Nor do we read the cases as so holding, which are cited and relied upon by the appellants. Of the cases cited, *Cole v. Sweet,* 187 N. Y. 488, 80 N. E. 355, is typical. In that case the defendant was compelled upon a citation issued out of a surrogate court

of New York to answer questions concerning various transactions she had had with the testatrix. In a subsequent suit which followed, certain of her answers were read in evidence by the plaintiff. Afterwards she was called as a witness in her own behalf and interrogated concerning her answers, when an objection was made on the ground that the statute prohibited her from testifying. The trial court overruled the objection, and the holding was sustained by the court of appeals. We do not understand from the opinion, however, that it was so held because the witness had been examined in the surrogate court, but that it was so held because the plaintiff had introduced the surrogate proceedings in the pending trial as a part of his evidence. This, we think, is made clear by the discussion of the court where this language is used:

"The point would not be open to discussion if the defendant had been sworn in this action in behalf of the plaintiff but there is no substantial difference between such a situation and the one before us, where the testimony of the defendant taken in another proceeding at the instance of the real plaintiff herein was read in evidence *in extenso*. Equality cannot be preserved, nor unfair advantage prevented, if a party is allowed to do indirectly that which he could not do directly.

"We think, as was said by the learned Appellate Division, 'that the plaintiff, under the circumstances presented here, by reading the defendant's testimony given in the Surrogate's Court in evidence as a part of his case on this trial, is in no different position than if he had called the defendant to the stand as his witness and elicited from her the same testimony which she had given in the Surrogate's Court. The evident purpose in not calling her was to prevent her from giving on cross-examination the testimony now objected to by the plaintiff. . . . The plaintiff, by the course adopted in getting her testimony, has . . . clearly opened the door to the defendant to tell the whole of any transaction about which she had been

partially examined and should be held to have waived the right to invoke the aid of section 829 to prevent her from so doing.' ''

On the other hand, in *Maldaner v. Smith,* 102 Wis. 30, 78 N. W. 140, it was held that the incompetency of a party to testify concerning a transaction between himself and a deceased person, was not removed by the fact that the adverse party had caused him to be examined about the transaction in another proceeding. The court saying:

''The mere fact that *Smith* was examined otherwise than as a witness, so long as plaintiff did not offer such examination in evidence, did not open the door for *Smith* to testify on the trial. The foundation for the examination of a party as to transactions with a deceased agent must be laid by the opposite party. Here the trial court reversed the rule of the statute, overlooking, obviously, the elementary principle that a deposition or examination taken out of court does not become evidence for a party taking it, or any party to the cause, till offered and received as evidence, and that it is then evidence only for the party who offers it. In all cases where a party offers in evidence a deposition taken by the opposite party, he makes it his own evidence; the latter can then object to his own interrogatories therein, the same as if propounded by the former, and can object to the competency of the witness the same as if the deposition were taken for his adversary. Jones, Ev. § 703. The use of a deposition by one party, taken by the other, gives it no different status in the case than the evidence of a party, or of a witness called into court in his behalf, when called to the stand by his opponent. *Hazelton v. Union Bank,* 32 Wis. 34.''

So, in Jones, Evidence, § 782 (2d ed.), it is said:

''Objection to the competency of the adverse party may be waived *if the testimony of the deceased* or incompetent person which has been preserved in the bill

of exceptions *is introduced,* or if such *testimony,* taken *at a former trial* or hearing of the action, is presented by the representative. If the whole of the testimony so taken is not read, the adverse party may read as much more as he deems necessary to present his case fairly to the jury; and, as in the case of depositions, the adverse party may himself testify as to transactions with the deceased or incompetent person which were dealt with in the testimony so introduced. The rule is that the *evidence must be competent at the time it is given.* If the adverse party has died or become incompetent since the trial began, the other party is disqualified by these statutes, as they have reference to the time of trial, rather than to that at which the suit was begun. So if the other party to the action has died or become incompetent since being examined, the adverse party is not competent as to transactions with the deceased party which are not treated in this testimony. Nor is the adverse party competent to testify as to transactions with a deceased or incompetent person, even if at a *former trial* of the same action, occurring before his death or incompetency, the *deceased or incompetent person testified* fully as to such transactions, unless this testimony has been introduced by the representative. The mere fact that the representative called the adverse party at a former trial does not make him competent as to any such communication or transaction at a new trial of the action, unless the representative in some way waives the privilege of objecting to the competency of the adverse party as a witness.''

These authorities state the rule as we understand it, and we hold there was no error in rejecting the testimony.

The court allowed the administrator to testify over objection that his father had, a short time prior to his death, shown him certain of the personal property of which recovery is sought and to testify that the same was then in his father's possession. He was also allowed to testify over objection to certain declarations

of ownership then made by his father. It is contended that this testimony was inadmissible, but we are clear that it presents no reversible error. Possession and control of property is some evidence of ownership, and the testimony concerning the possession was admissible for the purpose of showing ownership in the deceased. Whether the declarations of the deceased as to his ownership were likewise admissible presents a more troublesome question. It is not necessary, however, that we decide it. Disregarding the testimony, there still remains in the record sufficient evidence to sustain the conclusion of the trial court.

The claim of right to recover attorney's fees incurred in the action as part of the damages is founded on § 101 of the probate code (Laws of 1917, p. 670). That section provides:

"If any person, before the granting of letters testamentary or of administration, shall embezzle or alienate any of the moneys, goods, chattels or effects of any deceased person, he shall stand chargeable, and be liable to the executor or administrator of the estate, in the value of the property so embezzled or alienated, together with any damages occasioned thereby, to be recovered for the benefit of the estate."

But it is clear that the damages referred to are damages occurring prior to the commencement of the action, not the costs and disbursements incurred in the action brought to recover the property. The statute relating to costs and disbursements in itself provides what may be recovered under these heads in the particular action. This includes a limited attorney's fee, and is all that can be recovered as attorney's fees unless the statute expressly allows an additional recovery.

For the error noted, the judgment is reversed, and the cause remanded with instruction to enter a judg-

ment for the recovery of the property, excluding the item of damages claimed as attorney's fees.

PARKER, C. J., BRIDGES, MACKINTOSH, and HOLCOMB, JJ., concur.