Estate of Ford: Smart, Appellant, v. Estate of Ford and another, Respondents.

*February 7—March 3, 1964.*

For the appellant there was a brief by *Robert R. Biglow* of Minneapolis, Minnesota, attorney, and *Robert N. Ledin* of Washburn of counsel, and oral argument by *Mr. Jack R. DeWitt* of Madison, and *Mr. Biglow.*

For the respondents there was a brief by *Norlin & Spears* of Washburn, and oral argument by *Walter T. Norlin.*

BEILFUSS, J. *Transaction with the deceased.* The trial court correctly held the claimant Smart was incompetent to testify as to any transactions or communications between himself and the decedent Mrs. Ford as being prohibited under the so-called "dead man's statute," sec. 325.16, Stats.[1] Clearly Smart is a party to the controversy, he has a financial interest in the outcome and seeks to prove his claim by

[1] "TRANSACTIONS WITH DECEASED OR INSANE PERSONS. No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. And no stockholder, officer or trustee of a corporation in its behalf or interest, and no stockholder, officer or trustee of a corporation from, through or under whom a party derives his or its interest or title, shall be so examined, except as aforesaid."

his testimony which relates to a transaction or communication had by the witness personally with the deceased.[2]

*Agency of the husband.* The claimant contends that Mr. Ford was agent of the deceased and that he made statements and oral promises to the claimant outside her presence and in her presence and that she did not protest nor comment upon promises made by Mr. Ford in her presence.

The testimony by Smart which establishes the agency is as follows:

"*Q.* Now, who did you first contact when you were hired out there? *A.* You mean in 1946?

"*Q.* Yes. *A.* I first met Les Holms . . . the manager at the time . . . he is the one that took my application . . .

"*Q.* And did you have any contact with Mr. Ford at that time? *A.* Yes, Mr. Ford came up after I was hired and approved of the hiring.

"*Q.* He approved of your being hired . . . himself? *A.* Yes.

"*Q.* And subsequent to that, did Mr. Ford do any hiring and firing himself? *A.* Yes . . . yes, he did . . . he personally dismissed Les Holms and more or less hired me to replace him.

"*Q.* And did Mr. Ford write any checks on this business? *A.* Yes, he did . . . he had his own personal checks which he signed W. R. Ford.

"*Q.* Did he give you directions from time to time as to what duties to perform? *A.* Yes, he did.

"*Q.* And what duties not to perform? *A.* Yes, he did.

"*Q.* And did he, to your knowledge, instruct some of the other employees what to do from time to time? *A.* Yes, he did."

The testimony given by Smart in an adverse examination before trial sharply contradicts this testimony.[3]

---

[2] For excellent reviews of cases and rulings on the "dead man's statute," see 1948 Wisconsin Law Review, 491; 43 Marquette Law Review (1959), 73.

[3] "*Q.* Who really engaged you then? *A.* Mrs. Ford . . . Oh, Combs [sic] was the first fellow that hired me . . . he was working

The trial court held that agency was not established. We conclude that if only the testimony given at the trial is to be considered the agency relationship was established.

The rule of agency between husband and wife insofar as third persons are concerned is stated in *DeByle v. Roberts* (1956), 273 Wis. 648, 652, 79 N. W. (2d) 115:

"The Wisconsin rule in cases of apparent authority of an agent is stated in *McDermott v. Jackson,* 97 Wis. 64, 73, 72 N. W. 375, as follows:

" 'If a third person, because of appearances for which the principal was responsible, believes and has reasonable ground to believe that the agent possessed power to act for the principal in the particular transaction, if such third person was, in the exercise of reasonable prudence, justified in believing that the agent possessed the necessary authority, then the principal is responsible to such third person the same as if the agent possessed all the power he assumed to possess.'

"That quotation was cited with approval in *Voell v. Klein,* 184 Wis. 620, 622, 200 N. W. 364.

for Mrs. Ford . . . then Mrs. Ford was the one that hired me as manager . . . when she came up. . . .

"*Q.* How was your compensation for those first three years arranged, was that through Mr. Combs [sic] ? *A.* No, Mrs. Ford did all the paying with checks . . . she paid everything . . . salary . . . she handled all the money . . . all of the checks was signed by her.

"*Q.* Who made the agreement with you with respect to the amount of your initial compensation . . . did Combs [sic] ? *A.* No, that was a set amount . . . a set amount by Mrs. Ford. . . . It was set by Mrs. Ford how much the manager got . . . how much each employee got. . . .

"*Q.* I see. And at that time did Mrs. Ford interview you as to your interest in becoming manager, did she? *A.* Yes.

"*Q.* Or did she simply promote you? *A.* She just promoted me, yes. . . . Anything that we discussed, he [Mr. Ford] always had to have it OK'd by Mrs. Ford . . . before it was put into effect.

"*Q.* She was the boss. *A.* Yes, sir . . . definitely.

"*Q.* You looked to her for employment arrangements . . . compensation arrangements and so forth . . . not to Mr. Ford. *A.* That's right . . . everything was from her . . . she signed everything."

"Restatement, 1 Agency, p. 65, sec. 22, states the rule as follows:

" 'b. Neither husband nor wife by virtue of the relationship has power to act as agent for the other. The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs.' "

*Conversations of the agent or in presence of the agent.* The claimant argues with a good deal of persuasion that he should be permitted to testify as to conversations with an agent of the deceased or of conversations by the agent in the presence of the deceased. The gist of his argument is that the agent of the deceased is available to offer testimony to refute, contradict, qualify, or explain the testimony of the claimant so as to fairly protect the interests of the estate of the deceased.

Throughout the years, the "dead man's statute" has been subjected to criticism by eminent legal authorities.[4] In spite of these criticisms the legislature has seen fit to neither abolish nor effectively to amend the statute, nor has this court by construction relaxed its effect.[5]

No case has been cited nor have we found one where this court has permitted, over proper objection, an interested survivor to testify as to conversations or transactions with or in the presence of an agent of the deceased.

We did say in *Gulbrandsen v. Chaseburg State Bank* (1941), 236 Wis. 391, 403, 295 N. W. 729:

[4] 1948 Wisconsin Law Review, 491; 43 Marquette Law Review (1959), 73.

[5] *Estate of Kemmerer* (1962), 16 Wis. (2d) 480, 114 N. W. (2d) 803.

"But defendants now contend, in seeking to justify the admission of the testimony in question, that sec. 325.16, Stats., which bars such testimony in relation to conversations with a deceased, does not apply when the conversation was in the presence of a third person who,—as Henry Lietke in the case at bar,—is in fact the opposite party in the action and is himself in a position to take the stand and testify as to the conversation. The contention cannot be sustained. There is no such exception by virtue of any provision in sec. 325.16, Stats. The only case construing that statute, which is cited by defendants, is *Lowry v. Lowry,* 211 Wis. 385, 247 N. W. 323, 248 N. W. 472. That case is, however, not in point. The witness whose competency to testify was under consideration was an agent of the deceased and not, as in the case at bar, himself a party to the action whose interest therein was adverse to that of the deceased. On the other hand, that testimony which is otherwise incompetent and barred under sec. 325.16, Stats., is not rendered competent by reason of the fact that the transaction in question occurred in the presence of other persons who are mere intermediaries has been held in *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681; *Morgan v. Henry,* 115 Wis. 27, 90 N. W. 1012; and in *Anderson v. Laugen,* 122 Wis. 57, 61, 99 N. W. 437, the testimony of a witness, which was otherwise incompetent under sec. 325.16, Stats., was held to continue to be inadmissible even though the witness' transaction with the deceased took place in the presence of other persons who had an interest in the litigation. Consequently, in the absence of some provision in sec. 325.16, Stats., rendering testimony, which is otherwise incompetent thereunder, admissible because the transaction was in the presence of a third person who had an interest in the cause of action and is available and able to take the stand as a witness, the testimony given by Lowe as to his conversations with Emma Lietke was incompetent and should have been excluded upon plaintiff's objection."

We, therefore, hold that the claimant Smart was incompetent to testify as to conversations, with deceased or, in

her presence, with the husband-agent of the deceased, as being transactions with the deceased personally.

As to conversations between the claimant and the husband-agent, individually the claimant has not proven an agreement sufficiently definite to enforce.

*Admissibility of the adverse examination of the claimant.* The claimant contends that the "door was opened" so as to permit his testimony by virtue of the fact that he was examined adversely on the subject by the executor prior to trial.

The claimant was not examined adversely at the trial nor did the executor offer the adverse examination taken before trial. The claimant further contends that the whole probate record was offered and received without objection and the adverse examination was a part of the record.

In the case of *Estate of Shinoe* (1933), 212 Wis. 481, 485, 250 N. W. 505, an omnibus offer of all records, files, and papers in the estate was made by the claimant. Included in the file were two adverse examinations of the claimant. We held there:

"We are of opinion that in this state of the record the adverse examinations cannot be considered as in evidence. No specific mention was made of the adverse examinations. They were clearly not receivable when offered as the claimant was incompetent under sec. 325.16, Stats., to testify to any transaction or communication by him personally with the decedent and at that time there had been no 'opening of the door' by contestant. Upon the trial counsel opposing the claim had objected on the ground stated to every question put to the claimant involving a transaction with the deceased and the court had sustained the objections. Had a specific offer of the examinations been made he would certainly have objected to them on this ground.

"Moreover, the adverse examinations of the claimant could not be put in evidence by the claimant himself."

The trial court properly held that the adverse examinations of claimant Smart taken before trial were not a part of the evidence.

*Quantum meruit recovery.* The claimant alternately claims that he should be allowed to recover additional compensation upon the grounds that he has not been compensated for the reasonable value of his services.

The claimant was paid upon a monthly basis and in addition thereto was given his groceries and his living quarters at a nominal rental of $10 per month. The record reveals that Smart was paid at an increasing rate from 1948 to 1960, from approximately $1,900 to $3,645 per annum.

As to this issue the trial court in its memorandum opinion stated:

<u>"IV.    Burden of proof required.</u>

"1. Claimant has the burden of proof to establish his claim by a fair preponderance of the credible evidence. He must overcome the presumption that he was paid in full.

"In Estate of Del Marcell, 259 Wis. 47, the Court held:

" 'Where a stated sum has been regularily [sic] paid—during the decedent's life time, such payments are presumed to have been in full satisfaction thereof—'

"See also: Estate of Bretizman, 236 Wis 96

"2. Claimant states that he is entitled to have his claim allowed because the executor did not appear at the trial and that he should recover by default. The law is that the claimant has the burden of proof and unless he meets that burden with credible evidence, he can not prevail. It is concluded that there is not sufficient credible evidence in the record to support the claim of the claimant. He has failed to rebut the presumption that he has been paid in full. He offered only his own testimony and nothing else. His testimony as to transactions with the decedent were excluded because he was disqualified as a witness to testify as to any transactions or conversations with Mrs. Ford. The statements alleged to

have been made by Mr. Ford were not admissible for the reason that no agency relationship was established. He failed to make a 'Prima Facie' case.

"3. The claimant could testify as to what services he claims to have rendered and what his opinion is as to the value of the same.

"See: Kirkpatrick vs Kirkpatrick, 257 Wis 549

"4. However, the claimant has failed to establish any contract or agreement, express or implied, between himself and the decedent for additional compensation over and above that he has already received. Because of this complete failure of proof, it is concluded that the claim must be disallowed for the period of January 1, 1948 to April 9, 1960, the date of death of Mrs. Ford.

"5. It is believed that this case is controlled by Estate of Kendall, 270 Wis 349.

"In that case an employee worked many years for the decedent at very low wages. Just before the decedent died, he made out a check payable to the employee in the sum of $12,000.00. The employee was unable to cash the check after the death of the decedent. The trial court allowed his claim in the amount of $12,000.00 as extra pay earned. The Supreme Court reversed the trial court and held that the employee was entitled to nothing. In the opinion, (p. 356) the Court held:

" 'The facts show only that the decedent felt under some obligation for the claimant's services and help, but they disclose no legal consideration, because a claim for an additional sum for services already rendered and fully paid for is without consideration on which it can be based.'

" 'In the absence of an express contract, the mere expression of belief by the claimant that the latter was not sufficiently paid, can not sustain a claim for extra compensation.'

" 'The adequancy [sic] or inadequancy [sic] of wages of the claimant is beside the point. The question is whether a contract or agreement existed between the deceased and the claimant, under which the claimant can claim additional compensation.'

" 'Claimant has the burden of proving that an express contract existed between him and the testator, that the ser-

vices were rendered by him, and that there was a failure to pay therefor on the part of the decedent.'

" 'The claim must fall because there is no showing of a contract.' "

We agree with the trial court. Under the facts of this case the claimant cannot collect additional compensation upon the theory of *quantum meruit*.

Mr. Smart also makes claim for his service from the date of death of the decedent, April 9, 1960, to July 15, 1960. The trial court has reserved a determination of this issue and may properly do so.

*By the Court.*—Judgment affirmed.