[No. 39584.    En Banc.    December 31, 1969.]

DANIEL McGUGART, *Respondent*, v. ADDIE M. BRUMBACK, *as Administratrix, Appellant.**

*Reported in 463 P.2d 140.

*Phil McIntosh* and *John R. Simmons,* for appellant.

*Culp, Dwyer, Guterson & Grader* and *Robert A. Keolker,* for respondent.

NEILL, J.—Plaintiff, Daniel McGugart, brought this action against the estate of William Rhodes, deceased, seeking to recover compensation for goods and services rendered decedent during his lifetime. The primary issue raised on appeal is whether the submission of written interrogatories to plaintiff concerning his alleged transactions with the decedent was a waiver of defendant's right under RCW 5.60.030, the deadman's statute, to bar testimony by plaintiff at trial.

Prior to trial, defendant administratrix submitted written interrogatories to plaintiff pursuant to CR 33, RCW vol. 0 (formerly RPPP 33). These included:

9. What were the nature of the goods and services allegedly rendered by plaintiff for the period March 1, 1951 to July 1, 1965?

10. Was the agreement to render goods and services to the Deceased oral or written?

11. State the nature of the agreement and the date said alleged agreement was entered into and where said alleged agreement was entered into.

12. Was the agreement to render 24 hour nursing care to the deceased oral or written?

13. State, in substance, the nature of the agreement to render nursing care if oral and, if written, set forth the written agreement.

. . .

15. What was the extent, the duties, and the nature of the nursing care rendered to the deceased subsequent to July 1, 1965.

Plaintiff duly answered the interrogatories. Defendant did not offer the interrogatories and answers into evidence at trial.[1]

During trial plaintiff was asked a question by his counsel concerning his oral agreement with the deceased. Defendant objected, contending the proffered testimony was incompetent under the deadman's statute. The objection was overruled on the ground that the submission of the interrogatories constituted a waiver of the bar of the statute. Later in the trial, an objection to similar testimony of plaintiff's wife was made by defendant. This objection was also overruled.

A judgment for plaintiff was entered on the theory that there was an implied contract between plaintiff and decedent.

Defendant administratrix appeals. Her principal assignments of error challenge the trial court's rulings on the competency of both plaintiff and his wife to testify concerning their transactions with the decedent.

The trial court's ruling was based upon our prior holdings that when a personal representative of a deceased person causes the pretrial deposition of the adverse party to be taken,which reaches alleged transactions with the decedent, such inquiry constitutes a waiver of the bar of the deadman's statute with respect to such transactions. *American Fruit Growers, Inc. v. Calvert*, 186 Wash. 29, 56 P.2d 1307 (1936). Also *Hall v. American Friends Serv. Comm., Inc.*, 74 Wn.2d 467, 445 P.2d 616 (1968); and *Miller v. O'Brien*, 17 Wn.2d 753, 137 P.2d 525 (1943).

Defendant urged to the trial court and reiterates here that the rule of *American Fruit Growers, Inc. v. Calvert*, *supra*, should be reexamined in light of changes in our rules and concepts of pretrial discovery proceedings as per-

---

[1] At the trial court's request, the interrogatories and answers were read into the record at the close of the case.

mitted by CR 33, RCW vol. 0, and CR 26, RCW vol. 0. We see no basis for distinguishing between a pretrial discovery process carried out by written interrogation under CR 33, rather than by deposition under CR 26. We believe that changes in the rules and the theories surrounding these discovery techniques require us to reexamine these earlier decisions.

These holdings force the representative of a decedent's estate to exercise these discovery procedures at his peril. The result is that a careful executor or administrator will waive the benefits of this useful fact finding procedure to avoid the forfeiture of the protection given by the statute to heirs, legatees and other creditors of the estate.

We have previously recognized the difficulty in laying down a fixed rule concerning questions which would constitute a waiver of the bar of the deadman's statute. *Miller v. O'Brien, supra.* In fact, whether there is a waiver would seem to depend as much upon the answers as upon the questions propounded. Therefore, as a practical matter, a decedent's representative is confronted with a Hobson's choice of either exercising his rights of discovery or relying upon the protective bar of the statute. Such a result and dilemma for a personal representative are not supported by the rationale behind either the rules or the statute.

Our discovery rules are taken almost verbatim from the Federal Rules of Civil Procedure. The pretrial deposition-discovery provisions of these rules were among the most significant innovations contained in the federal rules. They were designed to eliminate the "hide and seek" trial practices encouraged by earlier procedures. They serve to narrow the issues and provide access by all parties to the facts pertinent to these issues. It is well settled that these rules are to be given a broad and liberal construction. *See Moore v. Keesey,* 26 Wn.2d 31, 173 P.2d 130 (1946); *Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

Deadman's statutes are obviously designed to prevent frauds upon the estates of those who are no longer present to defend themselves. The doctrine that the personal repre-

sentative may waive the protection of this statute by using testimony forbidden to the other side is sound, and eliminates what would otherwise be a flagrant injustice in the statute.

> It would . . . be palpably unjust to permit the representative of a deceased person to use the adverse party to the extent that it might aid him in defeating a claim or in establishing an independent claim in favor of the estate, and then claim the benefit of the statute when the adverse party sought to qualify or explain his testimony.

*Robertson v. O'Neill,* 67 Wash. 121, 124, 120 P. 884 (1912).

At a time when depositions were always taken with a view toward introducing them in evidence and broad questions for purposes of discovery were prohibited, there was reason for the rule that objections to a party's competency were waived by deposing that party—particularly when the party questioned also waived any objections not made during the taking of the deposition.

The adoption of our new rules of discovery in 1950 marked a major change in our attitude toward interrogatories and depositions. Depositions may now be used for discovery, for use as evidence, or both. CR 26(a). Interrogatories no longer entail ritualistic little trials, but have become economical and expeditious means of discovery which frequently are not intended to be used as evidence. *Slover v. Harris,* 77 Wyo. 295, 314 P.2d 953 (1957).

All parties have the right to use these discovery techniques and their availability is essential to a fair trial of all the issues. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor, supra,* at 507. This mutual access to knowledge, secured by discovery, is a basic premise upon which civil litigation is now conducted and its availability should not be strictly contingent upon the rules of evidence or competency as are applied at trial.

To hold that the mere *taking* of a deposition constitutes a waiver arbitrarily forces the decedent's representative to forego either the protection of the deadman's statute or the

benefit of the discovery processes. Judicial dissatisfaction with the deadman's statute as expressed by some legal writers should not be used as an excuse to deprive a personal representative of an otherwise acceptable and acknowledged benefit of a fact finding process. The wisdom of the deadman's statute is a matter which has been determined by the legislature. The prudent personal representative can hardly be expected to waive a statutory protection and thus risk an unwarranted exposure for heirs, legatees and other claimants. The result, for all practical purposes, is that an estate is deprived of the discovery machinery available to other civil litigants. Any imbalance of the relationship between a decedent's estate and a claimant against the estate is created by the deadman's statute, not by a legitimate use of discovery procedures. The Supreme Court of Michigan arrived at a similar conclusion in *Banaszkiewicz v. Baun,* 359 Mich. 109, 115, 101 N.W.2d 306 (1960):

> It is apparent that there is no conflict between the purposes . . . of the dead man's statute and the rule for discovery. Both are intended to aid in arrival at truth and justice in litigation. Invoking the one need not be treated as a waiver of the other. Enabling both parties to become fully conversant with all the facts involved in a matter and to avoid "traps and surprises" makes for enlightened administration of justice. Its achievement need not be paid for by sacrifice of the object or purpose of the dead man's statute. There is no unfairness in permitting defendants and their counsel to know what plaintiff's claims are and the foundation on which she bases them and, yet, at the same time, closing her mouth at trial as to matters equally within the knowledge of the deceased whose mouth has been closed by death.

Further, the conclusion that the mere taking of a deposition constitutes a waiver is negated by CR 26(f), which reads:

> A party shall not be deemed to make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, . . .

4 Moore's Federal Practice § 26.35 (2d ed. 1968), at 1691, states one purpose of the Federal Rule 26(f) (identical to our CR 26(f)) as follows:

> The purpose of the first sentence of Rule 26(f) is to make it perfectly clear that by merely *taking* a deposition before trial a party does not thereby impose restrictions upon himself with respect to the deponent at the actual trial.

(Footnote omitted.)

The federal courts have repeatedly held that under this rule the mere taking of a deposition without introducing it into evidence does not amount to a waiver of the deadman's statute. *See* Moore, *supra*, p. 1691 n.1, citing *Anderson v. Benson,* 117 F. Supp. 765 (D. Neb. 1953); *Duling v. Markun,* 231 F.2d 833 (7th Cir. 1956); *Stricker v. Morgan,* 268 F.2d 882 (5th Cir. 1959).

In *Duling v. Markun, supra,* at 839, the court held that Rule 26(f) prevented a waiver of Indiana's deadman's statute even though under then existing state decisions the mere taking of a deposition amounted to a waiver:

> We do not think that a litigant in Federal Court must either refrain from taking advantage of the Federal Rules pertaining to discovery or to proceed to do so at his peril because, under state law, in a state court proceeding, the taking of a deposition is considered a waiver.
>
> The Federal Rules themselves indicate that a waiver should not result from the mere taking of a discovery examination. Rule 26(f) provides, in substance, that a party shall not be deemed to make a person his own witness for any purpose by taking his deposition. "* * * The purpose of the first sentence of Rule 26(f) is to make it perfectly clear that by merely *taking* a deposition before trial a party does not impose restrictions upon himself with respect to the deponent at the actual trial." Anderson v. Benson, D.C. 117 F.Supp. 765, 771.

Five years after the decision in *Duling,* Indiana adopted a state counterpart of Federal Rule 26(f) (Burns' Indiana Statutes Anno., § 2-1538). In 1967, the Indiana Supreme Court was faced with the argument that Indiana's adoption of Rule 26(f) invalidated the court's earlier decisions hold-

ing that the mere taking of a deposition amounted to a waiver under the deadman's statute. The court noted the inconsistency of the rule with their earlier waiver doctrine, *Plummer v. Ulsh*, 229 N.E.2d 799, 801 (Ind. 1967):

> In viewing this statute and the doctrine . . . together, it is manifest that they are inconsistent. The purpose of discovery is to bring out the relevant material before trial in an effort to better equip the litigants to decide what is actually at issue. One should not be penalized for the mere acquisition of information in furtherance of this purpose.

The court then concluded that the mere taking of a deposition under their new discovery statutes did not amount to a waiver of Indiana's deadman's statute and overruled such of their previous cases as were inconsistent with this conclusion.

In reaching this decision, Indiana joined what appears to be the uniform rule in federal courts and the general rule in state jurisdictions which have adopted the federal rules in substance. *See* 97 C.J.S., *Witnesses* § 243 (1957); *Stricker v. Morgan, supra; McCargo v. Steele*, 160 F. Supp. 7 (W.D. Ark. 1958), *aff'd*, 260 F.2d 753 (8th Cir. 1958); *Baumel v. Travelers Ins. Co.*, 179 F. Supp. 88 (E.D.N.Y. 1959); *Thomas v. Thomas*, 83 Idaho 86, 357 P.2d 935 (1960); *Hamilton v. Bethel*, 256 Iowa 1357, 131 N.W.2d 445 (1964); *In re Estate of Ford*, 23 Wis. 2d 60, 126 N.W.2d 573 (1964); *Stewart v. Brandenburg*, 383 S.W.2d 122 (Ky. App. 1964); *Banaszkiewicz v. Baun, supra; Slover v. Harris, supra; Small v. Shure*, 94 So. 2d 371 (Fla. 1957). *See* 43 Texas L. Rev. 435, 437 and 23 A.L.R.3d 389, 391 (1969).[2]

---

[2]The author of the annotation in 23 A.L.R.3d, at pages 391 and 392, succinctly states the difference in rationale:

[T]he cases have arrived at what are essentially conflicting results, principally upon a fundamental difference in basic philosophy regarding the purpose of pretrial examination. Thus, under the older view still adhered to in many jurisdictions, the courts speak in terms of the unfairness which would result if a party were permitted to conduct a so-called "fishing expedition" and then withhold the results if dissatisfied, and have equated the taking of a deposition or serving of interrogatories to the "calling of the witness" or "taking of testimony" within general rules or statutes providing that

Our case law regarding waiver of the deadman's statute originated at a time when legal rules relating to discovery by deposition and interrogatories were much different. Since that time, civil procedure has undergone basic changes in this state and most other states with the adoption of the federal rules. The general rule relating to waiver of the deadman's statute has reflected this increased encouragement of full discovery, but this court has until now failed to reexamine our waiver doctrine in light of these new developments. CR 26(f) was not mentioned in the briefs or the opinion of *Hall v. American Friends Serv. Comm., Inc.,* 74 Wn.2d 467, 445 P.2d 616 (1968), nor could it have been considered in cases decided prior to the adoption of this rule in 1950. Penalizing the use of discovery procedures by decedent's representatives when they are freely available to all other litigants is an unreasonable and improper method of indicating judicial dissatisfaction with the deadman's statute.

Therefore, we hold the mere taking of a deposition or propounding of interrogatories is not a waiver of the statute's (RCW 5.60.030) bar when the deposition or interrogatories are not introduced in evidence by a representative of the estate. *Cf., Percy v. Miller,* 115 Wash. 440, 197 P. 638.

---

such action waives the incompetency of the witness, with the result that they have held generally that the voluntary act of a party in taking the deposition of or serving interrogatories upon one who otherwise would be incompetent to testify constitutes a waiver of such incompetency, at least to the extent that the examination touches upon matters as to which the deponent is incompetent.

. . .

Although also represented by some of the older cases, the more recent trend has been to hold that the voluntary act of taking the deposition of, or serving interrogatories upon, one who would otherwise be incompetent as a witness in a particular civil action does not waive the incompetency of the witness unless the deposition or answers to the interrogatories are offered or introduced into evidence in the cause. The cases so holding generally reflect the liberalization of pretrial discovery procedures, particularly under the Federal Rules of Civil Procedure and various state statutes and rules patterned thereon, and effectively reject the older "no fishing" doctrine.

(1921), involving a special discovery proceeding in probate wherein we adopted a rule consistent with the position we take here. Our earlier cases to the contrary are overruled insofar as they are inconsistent with this view.[3]

■ The trial court's ruling that defendant had waived the bar of the statute by propounding interrogatories was therefore error. Plaintiff is precluded by the statute from testifying concerning his transactions with the deceased. Likewise, it is well settled that plaintiff's wife is an interested party within the bar of the statute, because any recovery by plaintiff from decedent's estate would inure to the benefit of the community composed of plaintiff and his wife. *See Boettcher v. Busse,* 45 Wn.2d 579, 277 P.2d 368, 49 A.L.R. 191 (1954); *Andrews v. Andrews,* 116 Wash. 513, 199 P. 981 (1921); *Whitney v. Priest,* 26 Wash. 48, 66 P. 108 (1901). Therefore, the trial court's ruling admitting plaintiff's wife's testimony concerning transactions with the deceased was also error.

■ Plaintiff further contends that even if the trial court erred in following the rule of *American Fruit Growers, Inc. v. Calvert,* 186 Wash. 29, 56 P.2d 1307 (1936), et al., that defendant waived the protection of the statute when she cross-examined plaintiff regarding the transaction with the decedent, citing *Ellis v. Wadleigh,* 27 Wn.2d 941, 182 P.2d 49 (1947). If plaintiff were correct in this contention, we should affirm the trial court under the rule that if the ruling of a trial court is correct on any basis, even one not argued or relied on at trial, the judgment should be affirmed. However, *Ellis* does not support the plaintiff's position. We pointed out in *Ellis,* that the bar of the statute may be waived and that such waiver may be by failure to properly object to testimony or by cross-examination of the adverse party. We held there was a waiver as the testimony of the adverse party as to transaction with the decedent was admitted on direct examination without objection.

---

[3]The cases inconsistent with the rule we adopt today are: *American Fruit Growers, Inc. v. Calvert,* 186 Wash. 29, 56 P.2d 1307 (1936); *Miller v. O'Brien,* 17 Wn.2d 753, 137 P.2d 525 (1943); *Hall v. American Friends Serv. Comm., Inc.,* 74 Wn.2d 467, 445 P.2d 616 (1968).

The rule of waiver by cross-examination is correctly delineated by a comparison of our holdings in *Robertson v. O'Neill*, 67 Wash. 121, 120 P. 884 (1912) and *Kline v. Stein*, 30 Wash. 189, 70 P. 235 (1902). In *Kline* we held that testimony of the adverse party as to transactions with the decedent which is brought out on cross-examination is still within the bar of the statute and inadmissible. In *Robertson* we held that cross-examination of the adverse party relating to transactions with the decedent constituted a waiver of the protection of the statute "where the cross-examination is extended beyond the scope of what the witness would have been permitted to testify in chief upon direct examination." It would be palpably unfair and in violation of the purpose of the deadman's statute to hold that the decedent's representative, who has properly objected to the direct testimony of the adverse party as to transactions or conversations with the decedent, waives the statutory protection by cross-examination of the witness solely on matters which the court permitted on direct examination. There is no waiver of the protection of the deadman's statute by cross-examination of the adverse party unless the cross-examination goes beyond the scope of the direct examination and into transactions or conversations between the decedent and the adverse party not testified to on direct examination. *See* Annot., 64 A.L.R. 1161 (1930); 107 A.L.R. 482 (1937); and 159 A.L.R. 411 (1945).

The record discloses that defendant administratrix clearly and timely objected to the testimony of Mr. and Mrs. McGugart and that her cross-examination of these witnesses, after the court permitted direct testimony on the theory that the discovery interrogation constituted a waiver of the protection of the statute, did not extend beyond the scope of the direct examination.

Defendant also assigns error to the admission of testimony of a Mrs. Anderson as being hearsay and self-serving. However, the court excluded this testimony and it appears in the record only as an offer of proof.

Since the errors resulted in the admission of the bulk of the testimony upon which the judgment is based, the judg-

ment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

HILL, WEAVER, HALE, and McGOVERN, JJ., concur.

HAMILTON, J. (dissenting)—I dissent. The majority, in my view, has unnecessarily and without compelling reason reached out to strike down a preexisting and well-established rule of law and procedure which found its judicial rationale and genesis in this jurisdiction as early as 1912, was fully recognized and expressed in 1936, and was reaffirmed by this court as late as 1943 and 1968. *Robertson v. O'Neill*, 67 Wash. 121, 120 P. 884 (1912); *American Fruit Growers, Inc. v. Calvert*, 186 Wash. 29, 56 P.2d 1307 (1936); *Miller v. O'Brien*, 17 Wn.2d 753, 137 P.2d 525 (1943); and *Hall v. American Friends Serv. Comm., Inc.*, 74 Wn.2d 465, 445 P.2d 616 (1968).

In so doing, the majority has quietly and conveniently ignored the history of interrogatories and depositions in this state, and has pivoted the about face upon the adoption in our state of the Federal Rules of Civil Procedure. Also, it seems to me, the majority has focused consideration of its innovation primarily upon the area of alleged contractual claims against a decedent's estate without giving full regard to the possible impact of the new approach in other contexts, *e.g.*, probate and contests of wills, tort and fraud actions, partnership accountings, partition proceedings, all of which fall under the constrictions of the so-called "deadman's" statute (RCW 5.60.030), when the estate of a decedent is appropriately involved. *In re Estate of Wind*, 27 Wn.2d 421, 178 P.2d 731, 173 A.L.R. 1276 (1947); *Maciejczak v. Bartell*, 187 Wash. 113, 60 P.2d 31 (1936); *Shaw v. Lobe*, 58 Wash. 219, 108 P. 450 (1910); *Hampton v. Gilleland*, 61 Wn.2d 537, 379 P.2d 194 (1963). The ramifications of the newly announced rule in these related areas of litigation were neither briefed nor argued by counsel nor explored by the majority in its discussion.

As early as the territorial days of 1854, this jurisdiction enacted statutes, in lieu of the common-law bill of discovery, which enabled the (1) pretrial discovery of facts and

documents material to the support or defense of pending litigation by way of written interrogatories to be answered under oath by an adverse party, (2) examination of an adverse party as a witness at trial, and (3) rebuttal by adverse testimony of any evidence of an adverse party elicited either through pretrial interrogatories or by examination at trial. Laws of 1854, 1st Ses., ch. 33, §§ 305, 306, 308, 309, p. 189. Furthermore, all or any pertinent parts of the interrogatories and answers could be introduced into evidence at the trial by the proponent. *Allend v. Spokane Falls & N. Ry.*, 21 Wash. 324, 58 P. 244 (1899). And, it was early determined that the proponent of interrogatories, the answers to which were later put in evidence at the trial by the proponent, was not bound by his adversary's answers. *Sawdey v. Spokane Falls & N. Ry.*, 30 Wash. 349, 70 P. 972 (1902).

Depositions, as distinguished from written interrogatories, were, on the other hand, generally limited to the preservation or perpetuation of the testimony of a witness who might not otherwise be available at the trial. Laws of 1854, 1st Ses., chs. 34, 35, 36, p. 190-93.

The early territorial laws and procedures remained with us in virtually their original form until their formal repeal by Laws of 1957, ch. 50, p. 179. They were, however, during the interim, periodically supplemented, expanded and partially abrogated by court rule.

In this latter respect, the first pertinent supplementation of the statutory discovery procedures by way of court rule appears to have surfaced in early 1927, when, pursuant to Laws of 1925, ch. 118, p. 187, authorizing such, this court first promulgated and adopted Rules of Pleading, Procedure and Practice. At that time Rule 8 of such rules, authorized the taking of the deposition of an adverse party and the use thereof as evidence in the trial. Rules of Pleading, Procedure and Practice 8, 140 Wash. xl (1927). It was under the reign of this rule that our decision in *American Fruit Growers, Inc. v. Calvert, supra,* was rendered.

The next significant change occurred in 1938 when the Rules of Pleading, Procedure and Practice were revised

and Rule 8, above mentioned, dealing with depositions, was altered to permit the pretrial oral examination of an adverse party. The altered rule, however, restored some of the original 1854 restrictions upon the use of depositions at trial. Rule of Pleading, Procedure and Practice 7, 193 Wash. 44-a (1938). It was against this background that the court reaffirmed the *American Fruit Growers* decision in *Miller v. O'Brien, supra.*

Except for the importation in 1942 of rules relating to pretrial conferences and admission of facts and genuineness of documents (Rules of Pleading, Procedure, and Practice 18, 21, 11 Wn.2d xviii, xx (1942)), modeled after the Federal Rules of Civil Procedure (effective September 16, 1938), no additional significant changes in the discovery procedures of this jurisdiction were forthcoming until 1950, when, as the majority point out, the language of the Federal Rules of Civil Procedure pertaining to depositions, oral examinations, and written interrogatories was adopted. Rules of Pleading, Practice, and Procedure 26, 30, 31, 33, 34A Wn.2d 84, 90, 94, 97 (1950). Without pertinent change these cited rules constitute our present CR 26, 30, 31, and 33, which permit pretrial discovery by way of oral examination as well as written interrogatories, and authorize use of the answers as evidence in the trial. Against this backdrop, we again reaffirmed the *American Fruit Growers, Inc.,* ruling in *Hall v. American Friends Serv. Comm., Inc., supra.*

In summary, this abbreviated review of the history, availability, and use of pretrial discovery in this state as between adverse parties, together with a comparison of the provisions of past statutes and present rules, indicates that, with the exception of a moderate broadening of the scope of inquiry by way of written interrogatory, the principal changes over the years have occurred in the deposition field, *i.e.,* broadening the scope and use of depositions and oral examinations. Thus, it would appear that the major shift in pretrial discovery procedures and techniques in this state, as between adverse parties, has been in method rather than availability. This is hardly the cataclysmic

change which the majority propounds as a reason for overruling the prior decisions of this court extending from 1936 to 1968, each of which was considered and decided within the framework of a system of statutes, rules, and judicial decisions permitting pretrial discovery and use of the information at trial.

To bolster its position, the majority point to decisions of federal courts, which, in turn, rely upon the first sentence of Fed. R. Civ. P. 26 (f), which asserts that a party shall not be deemed to make an adversary his own witness by pursuing discovery procedures. Here again, this offers but a straw upon which to rest the majority's conclusion, for whatever might have been the rule in federal jurisdictions prior to the advent of Rule 26 (f), *supra,* the rule in this state has always been that a party did not become bound by the testimony of his adversary when elicited either by way of pretrial written interrogatory or through examination at trial. Laws of 1854, 1st Ses., ch. 33, § 309; *Sawdey v. Spokane Falls & N. Ry., supra.* These federal decisions, therefore, offer a weak excuse for reaching a result contrary to our prior decisions.

Furthermore, it is reasonable to conclude that the basic purpose of the first sentence of Rule 26 (f), *supra,* is to enhance the opportunity to reveal truth and uncover falsity at the trial of a cause, by permitting a party before trial to freely seek and lay a foundation upon which to impeach or otherwise mount attacks upon the credibility of the opposing party's claim at the time of trial. Such a purpose, in my view, is inconsistent with the majority's expansion of the deadman's statute to the point where a claimant's mouth can now be forced open during pretrial discovery but may be effectively and unfairly closed at trial. Although the majority's approach may materially aid a personal representative in his pretrial search for the truth, it appears to me that it can seriously hamper a fair and equal revelation of the same truth at the time of trial.

Finally, the majority decries the so-called Hobson's choice which an executor or administrator must face when confronted by a claim against the estate of a decedent, *i.e.,*

to stand on the deadman's statute or to risk waiving it by pursuing discovery. To strengthen this argument, the majority again points to the expanded scope and use of discovery techniques under our current rules, and reasserts that the objective is the revelation of truth in litigation as well as the simplification of issues. Hence, the majority argues, it is unfair to thrust a personal representative into a position of being unable to stand upon the deadman's statute after the personal representative has conducted a thoroughgoing, under oath, exploration of a claimant's cause. In my view the reverse is true.

The majority asserts that, among others, one of the purposes of the deadman's statute is to prevent frauds upon the estates of those who are no longer present or competent to defend themselves. Whatever may be the validity of this assertion[1], it is equally proper to say that the deadman's statute was not designed nor intended to work a fraud upon legitimate claimants who have suffered some form of loss at the hands of a person since deceased. Moreover, the deadman's statute is a restriction upon the competency of witnesses and ought not be unnecessarily or overzealously extended. In fact, about half of the states of the Union do not have such statutes on their books and the proposed Uniform Rules of Evidence abolish the rule altogether. 5 R. Meisenholder, Wash. Prac. § 171 (1965), at 180. And, finally, it is to be borne in mind that the deadman's statute does not prohibit interested persons from testifying on behalf or in favor of an estate—it only precludes testimony of an interested party on his own behalf against an estate—thus further unbalancing the relationship of the parties and in-

---

[1]Professor Wigmore in his treatise on the law of evidence (2 J. Wigmore on Evidence §§ 578 and 578a (3d ed. 1940)) seriously challenges the assertion that a deadman's statute such as ours constitutes a valid protection against false claims. As a basis for his theme, Professor Wigmore points to two surveys on the subject, one conducted by a committee of judges, lawyers and law professors between 1921 and 1927, and a second at the behest of the American Bar Association in 1937-38. Both surveys concluded that such a statute was not a necessary protection against false claims, but rather was an unnecessary obstruction to the ascertainment of truth.

hibiting the search for truth in the particular litigation wherein it comes into play.

Returning then to the majority's Hobson's choice argument, it is reasonable to assume that when a claim, with its accompanying affidavit, is initially filed with an executor or administrator some kind of an investigation into and evaluation of its validity is pursued by the personal representative before he allows, compromises or rejects the claim. Certainly, the personal representative could do no less and still carry out his duties to legitimate creditors as well as his correlative obligation to protect the estate from invalid claims. In any event, at this point in time, the personal representative must, in relation to the claim, make some type of judgment based upon some kind of information concerning the background and circumstances giving rise to the claim. In the great majority of instances he does not act in a vacuum. And, it would not be unreasonable to assume in this connection that the personal representative, together with his attorney, would give some consideration to the applicability of the deadman's statute and its potential effect upon the ultimate establishment of the claim.

Again, when suit is filed on a rejected claim, accompanied as it usually is with a heavy burden of proof resting upon the claimant (clear and convincing proof in contract actions such as the instant one), it is not unfair to presume that the personal representative and his counsel come into possession of a bit more knowledge concerning the character and circumstances of the claim which enable them, for the second time, to evaluate the probable effect of the deadman's statute upon the claim and the advisability of standing upon it or waiving it.

Nevertheless, the majority would now afford a third opportunity for the personal representative to assess and weigh the impact of the deadman's statute upon the pending claim. And this it does, contrary to our former decisions, upon the basis that our current rules of procedure have broadened and expanded the methods of discovery. Thus, the majority would permit the personal representative on behalf of the estate to explore by way of oral

examination, depositions, written interrogatories, and requests for admission of facts every facet of the claimant's cause; extract and shrewdly utilize the favorable information while discarding the unfavorable matter; and at trial force the claimant to overcome not only the usually heavy burden of proof but also the restrictions of the deadman's statute. This, the majority contends, is essential to maintain a fair balance between the parties.

In short, as I glean the reasoning of the majority, it is to the effect that our former rule was proper because of the limited fishing rights then afforded to a personal representative, but now, since those fishing rights have been vastly expanded, it is appropriate to arm the personal representative with more hooks. This reasoning may find favor in the piscatorial field; however, I cannot agree that it lends aid to the search for truth in the field of civil litigation. Rather, in my view, our former rule provided a happy balance between the deadman's statute and pretrial discovery.

I would, accordingly, adhere to the rule announced in *American Fruit Growers, Inc. v. Calvert, supra,* and affirm the judgment.

HUNTER, C. J., FINLEY and ROSELLINI, JJ., concur with HAMILTON, J.